## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

05 - 10978 PBS

GROTON-DUNSTABLE )
REGIONAL SCHOOL DISTRICT, )
)                        MAGISTRATE JUDGE Sorkin
Plaintiff, )
)
v.                                      )    CIVIL ACTION
)    NO. _____
LAIDLAW TRANSIT, INC., )
)    On Removal from the Superior Court
Defendant. )    Department of the Trial Court of Middlesex
_____ )    County, Commonwealth of Massachusetts

RECEIPT # _____
AMOUNT $ 250
SUMMONS ISSUED N/A
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK. _____
DATE _____

### NOTICE OF REMOVAL

The defendant, Laidlaw Transit, Inc., hereby removes the above-captioned action

from the Superior Court of the Commonwealth of Massachusetts, Middlesex County

(C.A. No. 05-1524), to the United States District Court for the District of Massachusetts

pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441. The basis for removal is as follows:

1.      On May 5, 2005, the plaintiff filed its Complaint and Request for

Declaratory Judgment and Injunctive Relief ("Complaint") in the Superior Court,

Middlesex County, Massachusetts.

2.      On May 5, 2005, the defendant received *via* facsimile from the plaintiff

copies of the Summons and Order of Notice, Complaint (without exhibits), Memorandum

in Support of Plaintiff's Application for Preliminary Injunction, and Notice of

Appearance. Copies of all pleadings and other papers received by the defendant are

attached hereto as Exhibit A, as required by 28 U.S.C. §1446(a).

3.   This Notice of Removal is being filed within thirty (30) days after receipt by defendant of a copy of the Complaint and is timely under 28 U.S.C. §1446(b).

4.   As set forth in the Complaint, the plaintiff is a regional school district, organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in West Groton, Massachusetts.

5.   The defendant is a foreign corporation, organized under the laws of the State of Delaware and has its principal place of business in Naperville, Illinois. The defendant is not a citizen of the Commonwealth of Massachusetts where this action was brought by the plaintiff.

6.   Complete diversity of citizenship exists between the plaintiff and the defendant pursuant to 28 U.S.C. §1332(c).

7.   This action is a civil action in which the Plaintiff seeks injunctive relief, declaratory judgment and damages for an alleged breach of contract.

8.   The amount in controversy, exclusive of interest and costs, exceeds the seventy-five thousand dollars ($75,000) jurisdictional requirement under 28 U.S.C. §1332(a).

9.   This Court has original jurisdiction under the provision of 28 U.S.C. §1332, and this action may be removed to this Court by the defendant pursuant to 28 U.S.C. §1441.

10.   The defendant will promptly serve written notice of the filing of this Notice of Removal upon the plaintiff and the clerk of the Superior Court, Middlesex County, as required under 28 U.S.C. § 1446(d), and Massachusetts Local Rule 81.1.

2

11. By this Notice of Removal, the defendant is not waiving any objections as
to the sufficiency of service, venue, or personal jurisdiction over it. The defendant
hereby reserves all objections regarding service, venue, and jurisdiction in this action.

WHEREFORE, the defendant, Laidlaw Transit, Inc., respectfully removes this
action to the United States District Court for the District of Massachusetts pursuant to 28
U.S.C. §1441, and requests that this Court issue all necessary orders and process to bring
before it all proper parties to this case in the manner set forth in 28 U.S.C. §1447(a), and
for such other relief as the Court deems just and proper.

Respectfully submitted,

LAIDLAW TRANSIT, INC.

By its attorneys,

James J. Marcellino (BBO #318840)
McDermott Will & Emery
28 State Street
Boston, Massachusetts 02109
617-535-5000

Dated: May 11, 2005

3

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I have caused to be served a true and

correct copy of the Notice of Removal by first class mail and facsimile upon plaintiff's

counsel as follows:

> Rosann DiPietro, Esq.
> LONG & LONG
> 21 McGrath Highway, Suite 306
> Quincy, Massachusetts 02169

James J. Marcellino, Esq.

Dated: May 11, 2005

BST99 1457747-1.071300.0010

4

LONG & LONG
ATTORNEYS AT LAW
21 McCRATH HIGHWAY
SUITE 306
QUINCY, MA 02169-5551

MICHAEL J. LONG
JOSEPH P. LONG
ROSANN DiPIETRO

May 5, 2005

TELEPHONE (617) 773-9400
FACSIMILE (617) 773-5401
email@long-law.com

Via facsimile #312-984-7700

Virginia Holden, Attorney
McDermott, Will & Emory
227 West Monroe Street
Chicago, IL

Re:    Groton-Dunstable Regional School District v. Laidlaw Transit, Inc.
       Middlesex Superior Court Docket No. 05-1524

Dear Attorney Holden:

       As we discussed, enclosed please find copies of the following documents:

       1.    Summons and Order of Notice
       2.    Complaint
       3.    Memorandum in Support of Plaintiff's Application for Preliminary
             Injunction
       4.    Notice of Appearance

       The exhibits to the Memorandum are not faxed herewith, as they are quite
voluminous. We are in the process of forwarding these materials to the civil process
service division of the Suffolk County Sheriff's Department for service on Laidlaw's
registered agent in Massachusetts. If you can accept service on behalf of Laidlaw, would
you let us know as soon as possible. Thank you for your attention to this matter.

                                           Very truly yours,

                                           Rosann DiPietro

Enclosures

## Commonwealth of Massachusetts
### County of Middlesex
### The Superior Court

CIVIL DOCKET# **MICV2005-01524**

Groton-Dunstable Regional School District, Plaintiff(s)
vs.
laidlaw Transit, Inc.

, Defendant(s)

### SUMMONS AND ORDER OF NOTICE

To the above-named:

You are hereby summoned and required to serve upon
**Howard L Greenspan, Esquire,** plaintiff's attorney, whose address is **220 Broadway Suite 204Lynnfield, MA 01940** , an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Cambridge either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Middlesex County Superior Court, in Cambridge on **05/16/2005, at 02:00 PM in Rm 12A (Cambridge),**
at which time you may appear and show cause why such application should not be granted.

**Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at Cambridge, Massachusetts this 5th day of May, 2005.

Edward J. ⟨signature⟩ Clerk

**(AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)**

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
CIVIL ACTION NO.

05-1524

GROTON-DUNSTABLE REGIONAL SCHOOL
DISTRICT,

Plaintiff

vs.

LAIDLAW TRANSIT, INC.,

Defendant

COMPLAINT
AND
REQUEST FOR
DECLARATORY AND
INJUNCTIVE RELIEF

## INTRODUCTORY STATEMENT

This case involves a dispute between Groton-Dunstable Regional School District
(hereinafter "Groton-Dunstable" or "plaintiff") and Laidlaw Transit, Inc. (hereinafter
"Laidlaw" or "defendant") concerning the interpretation of the bus transportation
contract, and an extension thereto, between the parties. Groton-Dunstable maintains that:

A.    Laidlaw has breached that contract by refusing to permit its bus drivers to (a)
      receive training in the administration of epinephrine by use of an auto-injector
      device, commonly referred to as an "Epipen," and (b) administer it to
      students if necessary, and

B.    Groton-Dunstable has the right to terminate the contract without standing in
      breach of same due to its determination that (a) Laidlaw cannot perform the

contract to Groton-Dunstable's satisfaction and (b) this inability to perform is
dangerous to the health and safety of its students.

## PARTIES AND JURISDICTION

1.  The plaintiff, Groton-Dunstable Regional School District, is a Regional
    School District, duly organized under the laws of the Commonwealth of
    Massachusetts, particularly M.G.L. c. 71, §15 et seq., having a principal place
    of business at 73 Pepperell Rd. West Groton, MA 01450.

2.  The defendant, Laidlaw Transit, Inc., is a corporation organized under the
    laws of Delaware with its corporate headquarters at 55 Shuman Boulevard,
    Suite 400, Napervilles, IL 60563.

3.  The defendant has corporate offices in Massachusetts at 313 Boston Post
    Road West, Marlborough, Massachusetts and 171 Dwight Road, Suite 100,
    Longmeadow, Massachusetts.

4.  The defendant registered with the Massachusetts Corporations Division on
    August 26, 1987 as a foreign corporation and is authorized by the Secretary of
    State to conduct business in Massachusetts.

5.  The defendant regularly conducts business in Massachusetts.

6.  The plaintiff's cause of action arose out of the defendant's activities within
    Massachusetts.

7.  The court has jurisdiction over the person of the defendant pursuant to
    Massachusetts General Laws, Chapter 223A, Section M.G.L. c. 223A § 3.

## FACTS

8.  Following the publication of an Invitation for Bid and receipt of bids pursuant to Massachusetts General Laws, Chapter 30B, the plaintiff and defendant entered into a contract, effective from August 1, 2001 to June 30, 2004, whereby the plaintiff would pay a fee in exchange for which the defendant would provide the vehicles, equipment and labor, including properly trained and licensed bus drivers, for transportation of pupils in the school district. That contract provided for the school district's option to extend the contract to June 30, 2006.

9.  On or about May 25, 2004, the school district exercised the option to extend the contract to June 30, 2006.

10. The contract term expires June 30, 2006.

11. Under the contract and its extension, the defendant agreed to provide properly trained and licensed bus drivers.

12. The defendant agreed to provide bus drivers trained in first aid.

13. The defendant agreed to have its bus drivers receive further first aid training from the plaintiff's school nursing staff, which training included the administration of epinephrine by auto-injector device (commonly referred to as an "Epipen") to students who are at risk of suffering anaphylactic shock and whose physicians have prescribed Epipens for them.

14. The defendant agreed to provide bus drivers who were willing to administer the epipen, after being properly trained, should the need arise.

15. Until approximately November 29, 2004, the defendant performed the above-referenced duties as part of its contractual obligations.

16. After the plaintiff exercised its option to extend, the defendant notified the plaintiff that it would no longer be permitting its bus drivers to receive training in epipen administration nor to allow its bus drivers to administer the epipen at all.

17. Since approximately November 29, 2004, the defendant has no longer performed this contractual duty.

18. The defendant states that it will not perform this contractual obligation for the remainder of the contract term, which expires June 30, 2006.

19. The school district in an effort to convince Laidlaw to fulfill its contractual obligations, offered to indemnify Laidlaw against any harm flowing from the administration of the epipen.

20. Epipens are used to treat anaphylactic shock, a potentially life threatening allergic reaction that may occur quickly.

21. Epipens can be administered by non-medical personnel if they receive appropriate training from a school nurse.

22. The contract provides:

In addition to the termination provisions provided in the Invitation to Bid, the Contractor agrees that if at any time during the term of this contract, the school district determines that the contractor is negligently or incompetently performing the work, or any part thereof, or that the contractor is unable to the satisfaction of the school district to perform this contract in accordance with all of its terms and provisions and the school district determines that the health and safety of the students or other passengers is endangered, the school district may, after forty-eight hours written notice to the contractor if the matter complained of remains uncorrected, at its election at any time thereafter, terminate this contract by written notice to the contractor. In any

4

such case, the notice terminating the contract shall specify the effective date of such notice, and thereupon, the date so specified, this contract shall terminate. (contract, sixth paragraph).

## COUNT I-BREACH OF CONTRACT

23.  The plaintiff incorporates the allegations contained in paragraphs 1 through 21 as if set forth in full herein.

24.  The plaintiff paid a fee in consideration of the defendant's assumption of the obligation to provide all vehicles, equipment and labor for transportation of pupils in the school district.

25.  Thus, a contractual relationship exists between the plaintiff and defendant.

26.  The written contract in addition to the practices and conduct of the parties in interpreting that contract govern the contractual relationship between the parties.

27.  The plaintiff has performed all of its contractual obligations and is ready, willing and able to continue to perform all of its contractual obligations.

28.  The defendant breached the contract with the plaintiff in that it failed to perform its promise to provide bus drivers who would submit to training by school district nursing staff in the administration of the "Epipen" and who would be willing to administer the Epipen if necessary as a part of their first aid functions.

29.  The defendant has stated that it will not perform this obligation in the future for the remainder of the term of the contract, which expires June 30, 2006.

30. The plaintiff has suffered damages as a result of the defendant's breach of the contract and continues to suffer irreparable harm as a result of the defendant's breach and repudiation of its contractual obligations

## COUNT II: PROMISSORY ESTOPPEL

31. The plaintiff incorporates the allegations contained in paragraphs 1 through 30 as if set forth in full herein.

32. The defendant made a promise to the plaintiff to provide bus drivers who were properly trained in first aid, who would receive training from school nursing staff in the administration of the Epipen, and who would be willing to administer the Epipen if necessary.

33. The defendant had reason to expect that the plaintiff would rely on the promise

34. The promise induced actual reliance on the part of the plaintiff to its detriment.

35. Circumstances are such that justice requires enforcing the promise.

## COUNT III – DECLARATORY JUDGMENT

36. The plaintiff incorporates the allegations contained in paragraphs 1 through 35 as if set forth in full herein.

37. The interpretation of the above-referenced contract to the detriment of the plaintiff and its students has given rise to an actual controversy between the plaintiff and defendant as to their respective rights, duties and obligations as parties to a contract for the transportation of students.

6

38.   Therefore, this matter is properly before the court pursuant to Mass. Gen. L.
      Chapter 231A, Section 1.

39.   All necessary parties to this controversy are joined herein.

40.   Pursuant to Chapter 231A, the plaintiff is entitled to a declaration that:

      a.   the contract between the parties obligates Laidlaw to permit its drivers to
           be trained in the administration of the Epipen and to administer it should
           the need arise.

      b.   The defendant's non-performance of these duties and its refusal to perform
           them in the future constitutes a breach of the contract between the parties.

      c.   The defendant has been in breach of the contract since November 29,
           2004.

      d.   The plaintiff has the right to terminate the contract because it has
           determined the defendant is unable to perform to the plaintiff's satisfaction
           and, as a result, the safety and health of students is endangered.

### Prayers for relief

WHEREFORE, the plaintiff prays that this court:

1.  Adjudge and declare, pursuant to Mass. Gen. L. Chapter 231A, Section 1, et seq.,
    that

    a.   A contractual relationship exists between the parties.

    b.   The contract requires that the defendant to provide bus drivers who will
         (a) receive training in Epipen administration and (b) administer the Epipen
         if necessary as part of their first aid function, for the duration of the
         contract, which expires on June 30, 2006.

7

   c.  The defendant has been in breach of the contract since November 29,

       2004.

   d.  The contract permits the plaintiff to terminate the contract under the

       provision set forth in paragraph 21above based on the facts set forth in

       paragraphs 1 through 40 above.

2. Enjoin the defendant from refusing, for the remainder of the contract term, to

   perform its contractual duty to provide drivers (a) trained in administration of

   epipen and (b) willing to administer it if necessary.

3. Award the plaintiff just compensation and damages for the defendant's violation

   of the contract between the parties.

4. Award the plaintiff its costs, expenses and attorney's fees incurred in bringing this

   action

5. Award the plaintiff such other relief as this court deems just.

   THE PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES.

                                         Respectfully submitted,
                                         Groton-Dunstable Regional School
                                         District,
                                         By its Attorneys,

Dated:    1/4/05

                                         Howard L. Greenspan
                                         BBO # 210420
                                         220 Broadway
                                         Suite 204
                                         Lynnfield MA 01940
                                         (781) 598-4546

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.
                                        SUPERIOR COURT
                                        CIVIL ACTION NO.

                                        $05-1524$

_____
GROTON-DUNSTABLE REGIONAL
SCHOOL DISTRICT,
                    Plaintiff

vs.

LAIDLAW TRANSIT, INC.,
                    Defendant
_____

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

Now comes the plaintiff, Groton-Dunstable Regional School District by its

attorneys, pursuant to Mass. R. Civ. P. 65 and for the reasons set forth below, requests

that this Honorable Court issue a preliminary injunction ordering the defendant to permit

its bus drivers to be trained in the administration of epinephrine auto injector devices

("Epipens") and to permit its bus drivers to administer or assist in administering

"Epipens" to pupils who are passengers on school buses, should the need arise.

### A. STATEMENT OF THE CASE

This is a breach of contract action in which the plaintiff alleges that the defendant, a

provider of school transportation, has breached its school transportation contract with the

plaintiff by refusing to allow school bus drivers it employs to receive training in the

administration of epinephrine auto-injector devices, or "Epipens," and to administer

Epipens to students on school buses should the need arise.

## B. STATEMENT OF FACTS

1.  The Plaintiff, Groton-Dunstable Regional School District, is a duly organized regional school district under the laws of the Commonwealth of Massachusetts, having a principal place of business at 73 Pepperell Road, Groton, MA 01450.

2.  The Defendant, Laidlaw Transit, Inc., is a corporation organized under the laws of Delaware, has its corporate headquarters at 55 Shuman Boulevard, Suite 400, Napervilles, Illinois 60563 and has business offices in Massachusetts at 313 Boston Post Road West, Marlborough, Massachusetts and 171 Dwight Road, Suite 100, Longmeadow, Massachusetts.

3.  The defendant registered with the Massachusetts Corporations Division on August 26, 1987.

4.  Following the publication of an Invitation for Bid and receipt of bids pursuant to Massachusetts General Laws, Chapter 30B, the plaintiff and defendant entered into a contract, effective from August 1, 2001 to June 30, 2004, whereby the plaintiff would pay a fee in exchange for which the defendant would provide the vehicles, equipment and labor for transportation of pupils in the school district (Affidavit of Mary Jennings, attached hereto as **EXHIBIT 1**).

5.  That contract provided for the school district's option to extend the contract to June 30, 2006 (**EXHIBIT 1**).

Case 1:05-cv-10978-PBS  Document 1-2  Filed 05/11/2005  Page 13 of 34

6.     On or about May 25, 2004, the school district exercised the option to extend the contract to June 30, 2006. All of the terms and conditions of the original contract continued in effect (**EXHIBIT 1**).

7.     The written portion of the contract between the plaintiff and defendant is comprised of the Invitation to Bid, Bid Submissions by Laidlaw, and the Student Transportation Contract. These documents provide in pertinent part as follows:

     a.    All Laidlaw bus drivers are instructed in first aid and are expected to administer first aid when needed (Bid submissions by Laidlaw).

     b.    All matters pertaining to school transportation as specified in the contract shall be under the authority of the Groton-Dunstable Regional School District. (Invitation to Bid, Section 2.02)

     c.    The Groton-Dunstable Regional School District reserves the right to revoke any contract for cause and have any driver(s) removed from driving. (Invitation to Bid, Section 2.04).

     d.    Each bus will carry whatever equipment necessary to meet all appropriate laws and regulations during the life of this contract. (Invitation to Bid, Section 2.5).

     e.    Drivers (including substitutes) may be required to attend periodic School District conducted meetings (Invitation to Bid, Section 3.3).

     f.    The speed and method of operation of school buses shall always be such as to insure the maximum degree of safety for pupils, and

shall be in compliance with all state and local laws regarding this aspect (Invitation to Bid, Section 5.16).

g.  In addition to the termination provisions provided in the Invitation to Bid, the Contractor agrees that if at any time during the term of this contract, the school district determines that the contractor is negligently or incompetently performing the work, or any part thereof, or that the contractor is unable to the satisfaction of the school district to perform this contract in accordance with all of its terms and provisions and the school district determines that the health and safety of the students or other passengers is endangered, the school district may, after forty-eight hours written notice to the contractor if the matter complained of remains uncorrected, at its election at any time thereafter, terminate this contract by written notice to the contractor. In any such case, the notice terminating the contract shall specify the effective date of such notice, and thereupon, the date so specified, this contract shall terminate. (contract, sixth paragraph).

h.  This contract shall be considered to include all terms required to be included in it by applicable federal and Massachusetts law as though such terms were set forth in full herein. (contract, eighth paragraph).

**(EXHIBIT 1)**.

4

8.  From the commencement of the contract on August 1, 2001 until
    approximately November 29, 2004, the bus drivers employed by the defendant
    underwent training, directed by the Groton-Dunstable School District Nurse,
    in the administration of epinephrine auto-injector devices, commonly referred
    to as "Epipens." This training included instruction in how to recognize when
    an individual is experiencing anaphylactic shock, the effects of anaphylactic
    shock if untreated, when the administration of epipen is appropriate to reduce
    the effects of anaphylactic shock, how to administer the Epipen or how to
    assist an individual in self-administration, and the need to summon emergency
    personnel after administering the Epipen. Until approximately November
    29, 2004, the defendant accepted such training and agreed to assist pupils in
    self-administration of the epipen, or to administer them to younger students
    who could not self-administer them, should the need ever arise on the school
    bus. The defendant accepted these duties as part of its contractual obligations
    from August 1, 2001 until on or about November 29, 2004 (Affidavit of Mary
    E. Irelan, school nurse, attached hereto as **EXHIBIT 2**).

9.  Epipens, which contain a single dose of epinephrine, are used to treat
    individuals who are experiencing anaphylactic shock, usually brought on by
    an allergy to certain foods or insect venom that may cause potentially life-
    threatening swelling. Epinephrine decreases the swelling associated with an
    allergic reaction and stops the reaction from progressing. An allergic reaction
    from a food or bee sting allergy can get bad very quickly so the use of an
    epipen, which delivers medication within seconds, rather than several minutes

5

associated with oral medications, is strongly recommended. An epipen is a disposable drug delivery system with a spring-activated, concealed needle. It is designed for emergency self-administration to provide rapid, convenient first aid for individuals sensitive to potentially fatal allergic reactions (Affidavit of Richard U. Staub, M.D., school physician, attached hereto as **EXHIBIT 3**).

10. The most critical issue in treatment of anaphylactic shock is response time. To be effective, epinephrine must be administered within minutes, and sometimes within seconds, of the onset of an episode (**EXHIBIT 3**).

11. For this reason, physicians prescribe Epipens, which can be carried on an individual's person, and can be administered immediately, without the need to await the arrival of emergency medical technicians or physicians (**EXHIBIT 3**).

12. Epipens are designed so that they are easy to administer. A trained medical professional does not have to administer the shot. A reasonably prudent person can be trained in the administration of an Epipen, and children over age 7 can self-administer Epipens if they are trained properly (**EXHIBIT 3**).

13. The risk of harm from unnecessary Epipen administration is extremely remote. In fact, at the present time, there are no absolute contraindications from the Epipen (**EXHIBIT 3**).

14. The risk of harm from improper injection is far outweighed by the risk of not administering the Epipen at all (**EXHIBIT 3**).

6

15. The plaintiff registered with the Massachusetts Department of Health for Epipen administration (**EXHIBIT 2**).

16. On or about November 29, 2004, as the school nursing coordinator was attempting to schedule the annual Epipen training for Laidlaw bus drivers, a Laidlaw representative notified her that Laidlaw bus drivers did not administer Epipens anymore (**EXHIBIT 2**).

17. The nursing coordinator conveyed this information to the superintendent. (**EXHIBIT 1, EXHIBIT 2**).

18. Following this conversation between the Superintendent and the nurse, the Superintendent contacted James Schumann III of Laidlaw Transportation by telephone. Mr. Schumann informed the Superintendent in that telephone conversation that Laidlaw had taken the position that it will not allow any of its drivers to be trained in the use of Epipens for students and that, if a student suffers anaphylactic shock on a school bus, a monitor must be on the bus to administer the Epipen, or the bus driver would await the arrival of emergency response personnel.

19. Following the Superintendent's conversation with Mr. Schumann, the school nursing coordinator provided the Superintendent with a letter that had been written by Laidlaw on August 25, 2004, indicating that no Laidlaw employee will be allowed to administer any type of medication to other persons, including Epipens. The letter proceeds to state that "the safety and proper care of the children is our primary concern." [Emphasis added]. Although the letter was dated August 25, 2004, the school district did not receive a copy of

7

it until December of 2004, long after the school district exercised its option to
extend the contract.

20.	The Superintendent subsequently wrote to the Operations Manager for
Laidlaw Education Services. She referenced the long-standing practice of
Laidlaw of allowing its drivers to be trained in the administration of the
epipen and to administer the epipen when necessary for the safety of student
passengers (**EXHIBIT 1**).

21.	On January 7, 2005, the superintendent of schools met with the Vice President
of Operations for Laidlaw Transit and the General Manager of Laidlaw
Education Services (**EXHIBIT 1**). In that meeting, the Laidlaw executives
confirmed that they had directed their bus drivers not to administer Epipens
and that they were unwilling to revoke this directive.

22.	The Superintendent then wrote to Laidlaw following that meeting, confirming
that the parties would meet again a week later, by which time Laidlaw would
obtain 911 response times from member towns and the district would obtain
the number of students affected by the change in practice. With that letter, the
superintendent also provided Laidlaw with a copy of the Massachusetts
Department of Education publication "Managing Life Threatening Food
Allergies in Schools" (**EXHIBIT 1**).

23.	On January 14, 2005, the superintendent met again with the Vice President of
Operations for Laidlaw Transit as well as the General Manager for Laidlaw
Education Services. At that time, the district provided the names of students

8

requiring Epipens, and Laidlaw provided information on response time and location. **(EXHIBIT 1).**

24. Following that meeting, the Superintendent received a letter dated January 18, 2005 from Laidlaw. The letter characterizes the previous practice of bus drivers receiving epipen training was a "misunderstanding," and that the communication of the policy against medication administration was "not effective." In the letter the defendant acknowledges that Laidlaw drivers indeed attended epinephrine training conducted by the school nurse. Laidlaw states in the letter that, after reviewing 105 CMR 210, and Massachusetts Department of Education guidelines, we now know that according to 105 CMR 210 and the MDOE guidelines, the delegation of administration of prescription medications of any kind is limited to trained, nursing supervised school personnel, and not to contracted school bus drivers." **(EXHIBIT 1).** Nowhere in that letter does Laidlaw dispute the fact that it had been providing this service under its contract with the school district.

25. The letter acknowledges an average EMT response time of four minutes **(EXHIBIT 1).**

26. There was no offer in that letter to reduce the fee to be paid to Laidlaw in light of the fact that it was discontinuing a service that was previously provided **(EXHIBIT 1).**

27. Following the Superintendent's receipt of the letter dated January 18, 2005, she contacted the police, fire and EMT departments of Groton and Dunstable and learned that the average emergency response time to any point on the

9

school district bus routes is four (4) minutes. The time can actually be longer if emergency personnel are on another call (**EXHIBIT 1**).

28.   The school superintendent received a letter dated February 25, 2005 from the attorneys for Laidlaw Transit, Inc. In that letter, the attorneys argue that there is no legal obligation for bus drivers to administer epinephrine, based on their review of the law. There is no mention in that letter of the practice of Laidlaw in performing this duty from August 1, 2004 until December of 2004 **EXHIBIT 1**). Nowhere in that letter does Laidlaw dispute the fact that it had been performing this function under its contract with the school district.

29.   Following the receipt of the February 25 letter, the school district offered to indemnify Laidlaw against any harm resulting from epipen administration. Laidlaw, however, still refused to allow its bus drivers to administer Epipens or to receive training in Epipen administration (**EXHIBIT 1**).

30.   The school district has rerouted one bus route for the needs of one child and has notified parents that the district is in discussion with Laidlaw, so that parents may consider driving their children to school given the current circumstances (**EXHIBIT 1**).

31.   In reliance upon Laidlaw's assumption of the duty to provide coverage for the administration of Epipens on school buses, the school district for the 2004-2005 school year the school district did not budget additional funds to provide further training and personnel to provide coverage on school buses carrying students with potentially life-threatening allergies. The school district had purchased this protection by virtue of its contract with Laidlaw but is not

10

currently receiving the services for which it continues to pay Laidlaw in full.
(**EXHIBIT 1**).

32. Although the risk of an allergic reaction occurring on a school bus is remote, the magnitude of harm resulting from such an occurrence is great (**EXHIBIT 3**). The school district has attempted to cope with this reduction in coverage. However, in order to provide the greatest protection for student riders at the lowest impact to school operations, the defendant must immediately resume the practice that has been in place since August 1, 2001.

33. If the defendant is allowed to continue is practice of refusing to allow bus drivers to administer epipens, in the absence of an injunction the plaintiff will be forced to arrange for such coverage at the expense of other school programs and services (**EXHIBIT 1**). In essence, the plaintiff will be paying the defendant for services it is not receiving and will be forced to find funding to restore the previous level of protection to at risk students on school buses. Furthermore, the alternatives that the school district would have to employ will risk isolating and stigmatizing disabled students.

## C.   **THE PRELIMINARY INJUNCTION STANDARD**

To determine whether a preliminary injunction should issue, the court generally must evaluate (1) the plaintiff's claim that he will suffer irreparable harm if the injunction is denied; (2) the injury the defendant will suffer if the injunction is granted; and (3) the likelihood of success on the merits. GTE Products Corp. v. Stewart, 414 Mass. 721 (1993); Town of Brookline v. Goldstein, 388 Mass. 443 (1983); Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980).

11

## D.   ARGUMENT

### 1.   The plaintiff has a reasonable likelihood of success on the merits of its complaint.

#### a.   Personal Jurisdiction Over Defendant

To determine whether the court has personal jurisdiction over the defendant, the court must apply 1) the Massachusetts long-arm statute and 2) the due process requirements of minimum contact. The defendant satisfies both sets of requirements and is therefore subject to the court's jurisdiction.

The defendant is subject to the court's jurisdiction under the Massachusetts long-arm statute. (M.G.L. c. 223A § 3). To come within the reach of the long-arm statute the court must find that the defendant purposefully availed himself of the privilege of conducting business in Massachusetts. Droukas v. Divers Training Academy, Inc. 375 Mass. 149 (1978). Here, the defendant corporation registered with the Commonwealth on August 26, 1987 for a Foreign Corporations Certificate and provides transportation services to many of the Commonwealth's school districts. Thus, Laidlaw satisfies the "transacting any business" requirement found at M.G.L. 223A § 3(a).

The defendant also satisfies the due process requirements of minimal contacts between the defendant and the forum state. The court may assert specific personal jurisdiction where the cause of action arises directly out of or relates to the defendant's forum-based contacts. United Elec., Radio and Mach. Worders of America v. 163 Pleasant Street Corp., 960 F.2d 1081 (1ˢᵗ. Cir. 1992) Here, defendant's contractual relationship with the plaintiff is not an isolated transaction with little impact on the state, but rather an ongoing contract for services for the public at large. Thus, Laid law satisfies the due process requirement of minimal contact.

### b.  **Breach of Contract**

The defendant breached its contractual obligations to the school district when it prohibited its drivers from (1) participating in the aspect of first-aid training covering epipen administration and (2) administering epipens to students in distress.

The contract between the parties provides that the drivers employed by the defendant must be properly trained and licensed to drive a school bus. It also provides that the defendant will submit to periodic meetings conducted by the school district. It also provides that the bus contractor is responsible for providing the maximum degree of safety for the pupils being transported. Furthermore, the contract provides that, if the district determines the contractor is unable to perform the contract in accordance with all of its terms and provisions and the school district determines that the health and safety of students or other passengers is endangered, then the school district may, after 48 hours written notice, and if the matter is uncorrected, terminate the contract. Finally, the contract states that all provisions required by law to be included in the contract are considered part of the contract.

By law, school bus drivers must undergo a minimum of sixteen hour of pre-service training, eight hours of in-service training, a written examination and a road test in order to be licensed to operate a school bus. M.G.L. 90 § 8A; 540 CMR 8.03. The United States Department of Labor states that first aid is a part of this pre-service training (Bureau of Labor Statistics, U.S. Department of Labor, *Occupational Outlook Handbook*, 2004-05 Edition, Bus Drivers, on the Internet at http://www.bls.gov/oco/ocos242.htm). The law also requires every school bus to be equipped with a suitable first aid kit. M.G.L.

13

90 § 7B; 220 CMR 155.03(22); 540 CMR 21.03. The contract incorporates these provisions of law.

Although the contract between the parties does not mention Epipen administration specifically as part of the first aid duties of a school bus driver, the course of dealing between the parties establishes that the parties interpreted the duties of the bus drivers to include training and administration of Epipens if necessary. The district's nursing coordinator personally conducted Epipen training sessions during the term of the contract and its extension, until the defendant repudiated its obligations that included Epipen training. The defendant's bus drivers were prepared, until approximately November 29, 2004 when they were no longer permitted to do so, to administer the Epipen if necessary. The course of dealing between the parties may be examined to interpret ambiguous contract provisions or to supply missing terms that are not inconsistent with the specific written provisions. Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade. Restatement (Second) of Contracts, Section 202 (1981); Lodge Corp. v. Assurance Co. of America, 56 Mass.App.Ct. 195 (2002). In this case, the parties have clearly accepted the training and use of Epipens as an obligation on the part of the defendant.

The defendant has argued that it may repudiate this obligation because the law does not require contracted school bus drivers to perform this function. This argument rests on an incorrect interpretation of contract law. The relevant question is not whether the defendant is required to perform this function, but rather whether it is permitted by law to perform this function. Parties are free to engage in contracts over any subject

14

matter, as long as such subject matter is not prohibited by law. See, e.g., Wasserman v. Roach, 336 Mass. 564 (1958). A party asserting illegality as grounds for avoiding a contract has the burden of proof on that issue. Id.

The obligation of contracted bus drivers to receive training and administer Epipens is permitted by law. Regulations promulgated by the Massachusetts Department of Public Health permit non-medical school personnel to administer epinephrine as long as they receive proper training from a school nurse. See 105 CMR 210.100. There is no law prohibiting the word "personnel" from being interpreted to include not only direct employees of school districts, but also any of their contractors who provide direct services to pupils. Interpreting the word "personnel" to include bus drivers is consistent with the obvious purpose of these regulations, which is to remove barriers to the availability of potentially life saving measures that are relatively simple to administer.

In 2002, in response to the rising number of students with life-threatening food allergies, the Massachusetts D.O.E. specifically outlined the following duties for school bus companies: 1) provide a representative from the bus company for Team meetings to discuss implementation of a student's Individual Health Care Plan (IHCP); 2) provide training for all school bus drivers on managing life-threatening allergies (provide own training or contract with school); 3) provide functioning emergency communication device; 4) know local Emergency Medical Services procedures, and; 5) maintain policy of no food eating allowed on school buses. (*Managing Life Threatening Food Allergies in Schools*, Massachusetts Department of Education, p. 35)

The Pupil Transportation Guide, also from the D.O.E., provides additional guidelines for bus contractors. Most notably, this guide explains that the superintendent

15

is responsible for executing the transportation policy and all of the regulations adopted to implement that policy. It also notes that bus contractors are subject to all Massachusetts statutes governing buses, drivers, inspections and licensing. Furthermore, the Pupil Transportation Guide provides as follows:

> Bus drivers are responsible for the safety of children riding to and from school. Bus drivers have full authority over the bus and its passengers in route to and from school and during loading and unloading.

In addition, as noted above the law requires that all school buses be equipped with first aid kits and that bus drivers receive first aid training.

In addition, the law provides for epipen administration in before and after school programs. 105 CMR 210.001 et seq. It is consistent to conclude that the epipen can be administered by bus drivers on school buses. Just as before and after school programs are extensions of the school day, so is the bus ride to and from school. School rules apply on the school bus, and students can be disciplined for infractions that occur on the bus. As noted above, the administration of epipens by contracted bus drivers is not prohibited by law, anymore than the administration of Cardiopulmonary resuscitation or the Heimlich maneuver would be prohibited by law when administered by a properly trained bus driver. The defendant has engaged in a practice of performing the duty at issue in this case, and the plaintiff has relied on such performance.

The law emphasizes the reality that the Epipen is different from other medications. Speed is essential. In fact, the Department of Public Health in its school medication regulations has carved out an exception for epinephrine. To await the arrival of emergency medical technicians could very well mean the difference between life and death. Laidlaw rests on the fact that EMT's could arrive in approximately four minutes

16

to justify its refusal to allow bus drivers to administer the Epipen. The medical evidence establishes that four minutes may be too long in some cases. Indeed, one must conclude the very reason the Department of Public Health has carved out its only exception for epinephrine is that waiting for an ambulance may be the difference between life and death in some cases. The position taken by the defendant defeats the purpose of the Epipen entirely.

In summary, nothing in the law prohibits the administration of Epipens from being part of the job duties of a school bus driver, whether or not that driver is a direct school employee. In fact, one must conclude that, in the absence of contract language specifically excluding Epipen administration from a bus driver's duties, this should be included as part of their job.

Not only is the administration of the Epipen by contracted bus drivers permitted by law, the plaintiff maintains that anti-discrimination laws require the defendant to be prepared to administer Epipens on school buses. Section 504 of the Rehabilitation Act of 1973 states that "no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving federal financial assistance." 29 USC Sec. 794. Students with severe allergies are considered to be individuals with a disability under Section 504, and under the Americans with Disabilities Act, which is interpreted in substantially similar fashion as Section 504. Mystic Valley Regional Charter School, BSEA No. 3629 (March 19, 2004); Berlin Brothers Valley School District, IDELR 353:124 (OCR 1988); Montpelier School

District, 18 IDELR 1054 (1992); Garland Public Schools, 657 F.Supp. 1163 (1990;

*Greensville Country (VA) School District,* IDELR 353:118 (1988).

In addition, school transportation included in those activities or programs to

which disabled students are entitled equal access under Section 504 and the Americans

With Disabilities Act. In its statement of findings and purpose, Congress provides the

following language in the ADA:

> The Congress finds that--
>
> (1) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
>
> (2) historically, society has tended to **isolate and segregate** individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
>
> (3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, **education, transportation,** communication, recreation, institutionalization, health services, voting, and access to public services;
>
> (4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;
>
> (5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional **exclusion,** the discriminatory effects of architectural, **transportation,** and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, **segregation,** and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;
>
> (6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and **educationally;**
>
> (7) individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not

18

truly indicative of the individual ability of such individuals to participate in, and contribute to, society;

**(8)** the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, **full participation**, independent living, and economic self-sufficiency for such individuals; and

**(9)** the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 USC Sec. 12101(a)[emphasis added].

If there is a reasonable accommodation available that would permit the disabled student to access the regular school transportation, the reasonable accommodation must be provided under Section 504. One such reasonable accommodation is the presence of an Epipen and an individual properly trained to either administer an Epipen to an individual suffering from anaphylaxis or to assist in the self-administration of the Epipen. A school transportation provider cannot isolate students with allergies during the bus ride to school anymore than the school district could discriminate against students with disabilities once they arrived on school grounds. Nor can the transportation provider simply sit back and allow students with life-threatening allergies to go without first-aid treatment.

### c. **Promissory Estoppel**

Even if the court were to find that the contract did not include training and administration of the Epipen, the court could still grant injunctive relief under the doctrine of promissory estoppel. The doctrine of promissory estoppel is embodied in the Restatement Second of Contracts § 90 which states in pertinent part:

A promise which the which the promissor should reasonably expect to induce action or forbearance on the part of the promissee or a third person

and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Drennan v. Star Paving Co., 51 Cal.2d 409 (1958) is the leading case in this area, holding a subcontractor liable to a general contractor who had relied upon the subcontractor's bid. Massachusetts, as well as many other jurisdictions, have relied upon Drennan in applying the doctrine of estoppel. In Massachusetts therefore, a promise may become enforceable because of the promissee's reasonable and detrimental reliance. Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760-761; Hall v. Horizon House Microwave Inc., 24 Mass.App.Ct. 84, 93 (1987).

The doctrine of promissory estoppel is applicable to commercial transactions in Massachusetts. See McLearn v. Hill, 276 Mass. 519, 526-527 (1931); Baglio v. New York Central R.R., 344 Mass. 14, 19-20 (1962). Thus, the plaintiff may recover where 1) a promise was made; 2) the promisor had reason to expect that the plaintiff would rely on the promise; 3) the promise induced actual reliance, and; 4) the circumstances are such that justice requires enforcing the promise. See Janke Constr. Co. v. Vulcan Materials Co., 527 F.2d 772, 777 (7th Cir. 1976).

In this case, the defendant induced the plaintiff to rely on its conduct in (1) submitting bid documents that affirmatively stated that Laidlaw bus drivers are trained in first aid and are expected to administer it where needed and (2) in accepting training in the Epipen and its willingness to administer it. The plaintiff, in relying on this conduct by the defendant, did not take other courses of action, including the budgeting of the necessary funds and training of additional personnel, to insure the safety of students regarding the need for Epipen administration. The plaintiff exercised its option to extend, and then it received notice from the defendant that the defendant was changing its

20

practice concerning Epipen training and administration. The school budgeted a certain amount of money for transportation services. Now, as a result of the defendant's nonperformance, the school may be forced to re-direct its bus routes, reassign students to different buses or assign additional personnel to buses transporting students with life-threatening allergies. In addition to being costly, these alternatives are also likely to be illegal under Section 504 of the Rehabilitation Act of 1973, discussed above.

## 2. The plaintiff will suffer irreparable harm in the absence of the issuance of a preliminary injunction.

As a result of the defendant's nonperformance, the school may be forced to re-direct its bus routes, reassign students to different buses or assign additional personnel to buses transporting students with life-threatening allergies. These alternatives will force the school district to eliminate funding for other services and programs so that the school district can restore services for which it is already paying Laidlaw but no longer receiving from Laidlaw. Furthermore, any alternatives employed by the school district are likely to stigmatize and isolate disabled students contrary to the provisions of Section 504 of the Rehabilitation Act of 1973 which requires recipients of federal funding, such as plaintiff, not to discriminate against an otherwise qualified individual with a disability. Students with severe allergies are considered to be individuals with a disability under Section 504. Berlin Brothers Valley School District, IDELR 353:124 (OCR 1988); Montpelier School District, 18 IDELR 1054 (1992); Garland Public Schools, 657 F.Supp. 1163 (1990; *Greensville Country (VA) School District*, IDELR 353:118 (1988).

The plaintiff cannot isolate students with allergies during the bus ride to school anymore than it could discriminate against students with disabilities once they arrived on school grounds. Nor can the plaintiffs simply sit back and allow students with life-

21

threatening allergies to go without first-aid treatment. The defendant can simply permit its drivers, like other non-medical staff who provide direct services to students, to become prepared to administer the Epipen in the unlikely event it is necessary on a school bus. As noted above, the Epipen is safe and simple to use.

The plaintiff's reasonable expectation is that the defendant will meet its contractual obligations in compliance with Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. To implement a policy of blanket refusal to even consider administration of the Epipen is a clear violation of Section 504. Students with disabilities are entitled to use regular transportation if reasonable accommodations can be made to allow them to do so safely. The training of a bus driver to administer the Epipen or to assist in its administration is one such reasonable accommodation. The defendant should not be surprised to learn that, when it accepted its obligations under the contract with the plaintiff, some students in the population it has agreed to serve have disabilities, and some of those individuals may be entitled to accommodations as they ride the school bus.

## 3. The harm to the defendant if the injunction is granted is far outweighed by the harm to the plaintiff if the injunction is not granted.

An injunction should issue if, after consideration of the likelihood of success on the merits, the harm to the defendant in granting the injunction is far outweighed by the harm to the plaintiff in not granting the injunction. Commonwealth v. County of Suffolk, 383 Mass. 286 (1981). As noted above, the harm to the plaintiff in not granting the injunction is great.

22

If the injunction were granted, the defendant would be forced to provide a service that it has already provided in the past, and for which it continues to be paid to date. The harm to the defendant would not be financial, because it was already providing the disputed service from August 1, 2001 until approximately December 2004. The potential harm would consist of the effects of an unnecessary dose of epinephrine. The likelihood of any adverse effect from an unnecessary dose of epinephrine is remote, and the actual harm that would occur, if it occurred at all, would be minimal. The defendant may argue that harm would result if the shot were given improperly. However, as noted above, the risk of an improperly administered shot can be all but eliminated if the person is properly trained. The Epipen is designed to be administered in simple fashion by a non-medical person, indeed a person as young as age seven.

## E. CONCLUSION

For the above-mentioned reasons, the application of the plaintiff for a preliminary injunction should be ALLOWED.

Respectfully submitted,
Groton-Dunstable Regional School District,
By its attorneys,

Howard L. Greenspan
BBO # 2/0 9/0
220 Broadway
Suite 204
Lynnfield MA 01940
(781) 598-4546

Dated: 4/7/05

23

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    SUPERIOR COURT
                                                 CIVIL ACTION NO.

                                                 05-1524

---

GROTON-DUNSTABLE REGIONAL SCHOOL
DISTRICT,
                    Plaintiff

vs.

LAIDLAW TRANSIT, INC.,


                    Defendant

---

### NOTICE OF APPEARANCE

        Please enter my appearance for the plaintiff, Groton-Dunstable Regional School

District, in the above-captioned matter.


                                        Respectfully submitted,



                                        Rosann DiPietro, BBO #556685
                                        Long & Long
                                        21 McGrath Highway, Suite 306
                                        Quincy, MA 02169
                                        (617)773-9400

Dated:    5/4/05

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)   Groton-Dunstable Regional School District v. Laidlaw Transit, Inc.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

| | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
|---|---|---|
| | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.  for patent, trademark or copyright cases |
| ✓ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
| | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
| | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐   NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

YES ☐   NO ☑

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐   NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☑   NO ☐

A.   If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☑   Central Division ☐   Western Division ☐

B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐   NO ☑

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   James J. Marcellino, Esq.

ADDRESS   McDermott Will & Emery LLP, 28 State Street, Boston, Massachusetts 02109

TELEPHONE NO.   (617) 535-4000

(CategoryForm.wpd - 5/2/05)

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Groton-Dunstable Regional School District | Laidlaw Transit, Inc. |

| **(b)** County of Residence of First Listed Plaintiff  Middlesex County, MA | County of Residence of First Listed Defendant  DuPage County, IL |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY)  NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| **(c)** Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Rosann DiPietro, Esq., Long & Long, 21 McGrath Highway, Suite 306, Quincy, Massachusetts, 02169 (617) 773-9400 | James J. Marcellino, Esq., McDermott Will & Emery LLP, 28 State Street, Boston, Massachusetts 02109 (617) 535-4000 |

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | **III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury |  | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other |  |  | Under Equal Access |
|  | Employment | ☐ 550 Civil Rights |  |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of |
|  | Other |  |  |  | State Statutes |
|  | ☐ 440 Other Civil Rights |  |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. 1332(a)(1)

Brief description of cause: Plaintiff alleges Breach of Contract, and seeks compensatory, injunctive and delcaratory relief.

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** | CHECK YES only if demanded in complaint: |
|---|---|---|---|
|  |  | Preliminary Injunction | **JURY DEMAND:** ☒ Yes  ☐ No |

| **VIII. RELATED CASE(S) IF ANY** | (See instructions): | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 05/11/2005 | James J. Marcellino |

| **FOR OFFICE USE ONLY** | | | | |
|---|---|---|---|---|
| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |