UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **GROTON DUNSTABLE** | ) | |
| **REGIONAL SCHOOL DISTRICT** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-10978-PBS** |
| | ) | |
| **LAIDLAW TRANSIT, INC.** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PRELIMINARY INJUNCTION**

**I.     INTRODUCTION**

The Plaintiff, Groton Dunstable Regional School District (the "School District"),

has failed to sustain its burden of showing likelihood of success on the merits and

irreparable injury in the absence of injunctive relief.  There is no contract or other right to

the services alleged to be due.  What the School District seeks, essentially, is specific

performance of a written services contract that it contends covers the actual

administration of epinephrine by non-school personnel, namely bus drivers in the employ

of the Defendant Laidlaw Transit, Inc. ("Laidlaw").  The relief requested does not

maintain the status quo pending trial, but is the same relief to which the plaintiff might be

entitled after trial.  Any injury to the plaintiff, however, is fully compensable in money

damages, and is not unique.  In sum, the Plaintiff's request for preliminary injunction

fails on the facts and under law.

## II.    STANDARD TO BE APPLIED

This Court has issued several decisions regarding the issuance of preliminary

injunction.  Consistent with the standards to be applied in the First Circuit, and under

Federal Rules of Civil Procedure 65, the test has four factors:

1.    Likelihood of success on the merits;

2.    Irreparable harm to the plaintiff should preliminary relief not be granted;

3.    Whether the harm to the defendant from granting the preliminary relief

     exceeds the harm to the plaintiff from denying it; and

4.    The effect of the preliminary injunction on the public interest.

See Castellini v. Lappin, 2005 U.S. Dist. Lexis 6256 (D. Mass. April 12, 2005), see also

de Novellis v. Shalala, 1996 U.S. Dist. Lexis 21973 (D. Mass. July 29, 1996).

In Castellini, this Court determined that the "sine qua non of a preliminary

injunction is whether there is a likelihood of success on the merits." Supra at 7.  See also

Doe v. Weld, 954 F. Supp. 425, 430 (D. Mass. 1996).  To the extent that the plaintiff fails

to prove likelihood of success, there is no need for additional inquiry.

The plaintiff, however, has an additional burden – to show irreparable harm.  In

de Novellis, this Court determined that:

> [p]laintiff's must also 'establish irreparable harm, and point to
> factors sufficient to overcome the traditional unwillingness of
> courts of equity to enforce contracts for personal services.  Under
> the standard irreparable harm requirement, injuries that can
> generally be rectified through the standard adjudicatory process are
> not usually considered irreparable for the purpose of issuing
> preliminary injunctive relief.

de Novellis, at 5.

- 2 -

In de Novellis, this Court also notes that in analyzing the question, the court "may consider whether the remedy sought would be available to a plaintiff if she should ultimately prevail in the litigation."

This Court also observed, in Castellini, that:

> [i]rreparable injury in the preliminary injunction context means an injury that cannot be adequately compensated for either by a later issued permanent injunction, after a full adjudication on the merits or by a later issued damages remedy.

Castellini at 24.

## III.    OPERATIVE FACTS

Massachusetts statutes, regulations and guidance documents clearly support the position that an independent school bus driver in Massachusetts cannot be required to administer epinephrine.

The subject Agreement between the parties does not expressly deal with epinephrine or the administration of drugs.  The words "epinephrine" and "epi-pen" simply do not appear anywhere in the contract.

The "Student Transportation Contract (2001-2004)"  does provide, however, at the bottom of page 1, that:

> [t]his contract shall be considered to include all terms required to be included in it by applicable federal and Massachusetts laws as though such terms were set forth in full herein; ...

At page 9, of the Invitation to Bid, Section 5.16, the Agreement further provides that:

> [t]he speed and method of operation of school buses shall always be such to insure the maximum degree of safety for the pupils, and shall be in compliance with all state and local laws regarding this aspect...

Additionally, under "Additional Contract Terms and Conditions," page 17 of

Limitation to Bid, Laidlaw is to:

> defend, indemnify and hold harmless the Groton-Dunstable
> Regional School District, the town of Groton and the town of
> Dunstable against any and all suits, claims or liabilities of every
> name, nature and description arising out of or in consequence of
> the acts of its agents, servants or employees, in the performance of
> its obligation under this contract or by reason of its failure to fully
> comply with the terms of this contract…

Thus, absent a legal duty imposed outside the Agreement regarding

administration of epinephrine or epi-pens, there is no legal obligation on Laidlaw to

administer the drug.

There is no Massachusetts statute that requires or authorizes school bus drivers to

administer epinephrine to children with life threatening allergies on buses. The more

general "Good Samaritan Law" applicable to administration of medicine in schools

expressly protects only teachers, principals, secretaries, nurses, and "other public school

or collaborative school employee[s]" and does not mention  school bus drivers. M.G.L.

c. 71, §55A. Other Good Samaritan Laws in Massachusetts protect certain types of

health care providers, such as physicians, nurses, emergency medical technicians, and ski

patrols, but there is not such provision expressly applicable to public citizens in general,

or school bus drivers in particular. M.G.L. c. 111C, § 1 *et seq;* M.G.L. c.112, §§ 12B,

12C, 12F, 12V; and M.G.L. c.231, § 85I. Therefore, unless a school bus driver is

determined to be an "other public school or collaborative school employee," which they

are not, school bus drivers are not protected by the Commonwealth's Good Samaritan laws.

The motor vehicle statutes pertaining to equipment and operation of school buses requires that school buses be equipped with first aid kits. M.G.L. c.90, § 7B(13). The contents of those kits are specified in the regulations and do not include epi-pens.

There are no regulations that specifically require or authorize school bus drivers to administer epinephrine to children with life threatening allergies. There is a regulation regarding administration of epinephrine but it does not cover independent contractor bus drivers.

The pertinent regulation, 105 CMR 210.100, "Administration of Epinephrine" (a copy of which is provided as **Attachment A** to this Memorandum), permits a public school district or non-public school to register with the Massachusetts Department of Public Health ("DPH") for the limited purpose of "permitting <u>properly trained **school personnel**</u> to administer epinephrine by auto injector in a life-threatening situation <u>during the **school day**</u> when a school nurse is not immediately available, including field trips", providing that several conditions are met. (Emphasis added). Similarly, the DPH's website "Applying for Registration to Permit School Nurses to Delegate Prescription Medication Administration to Unlicensed Personnel" states that the purpose of the regulations is to "ensure that prescription medications are safely administered <u>*in*</u> schools." (Emphasis added).

The regulation gives broad powers to the school nurse, who is responsible for the school's program of epinephrine administration, including development of policies and written plans; coordination with all interested parties; registration of the program with the

- 5 -

DPH; selection, competency testing, and training of individuals authorized to administer the medication; and recordkeeping. The school nurse has final decision-making authority about the program, in consultation with the school physician, and the school committee approves the policies developed by the nurse. Persons authorized to administer epinephrine must meet the requirements of 105 CMR 210.004(B)(2). The parents of affected students must approve the program, including the individuals selected to administer epinephrine, in writing. It would therefore be the responsible nurse's and parents' decision to determine that school personnel can administer epinephrine to a particular individual in the role of "trained school personnel". The Regulation, however, does not reach bus drivers and/or bus driver employers.

Review of the Commonwealth's education statutes and regulations yield no authoritative definition for the terms "school personnel" and "school day." Thus, relying on logic and common meaning, bus drivers cannot be required to function as "school personnel" and are certainly not "school employees." In the absence of definition of "school day," it is also the case that time spent on a bus is not part of the "school day."

540 CMR 7.06(2) requires school buses to carry first aid kits and requires the kits to contain the usual materials (e.g., tape, bandages, scissors), but does not require inclusion of epi-pens. By comparison, the guidance document discussed below specifically recommends that first-aid kits containing epi-pens be available, for example, during after-school activities and that a responsible adult be trained to administer the epi-pen if necessary. The guidance omits such a specific recommendation for school bus drivers. The logical inference is that school bus drivers are not to carry or administer epinephrine.

- 6 -

The Massachusetts Department of Education, with support from DPH, published an 84-page document entitled "Managing Life Threatening Food Allergies In Schools" in late 2002. The document recommends planning, implementation, and emergency procedures for school nurses, parents, children, and others in the school community to consider in developing their own school-specific and student-specific programs. The document is considered "guidance" and therefore does not have the force of law. The guidance document was also prepared through the collective efforts of various state health-related agencies, health organizations, and parents and children, but failed to include input by school bus companies or the Department of Motor Vehicles (at least according to the Task Force identified at the end of the document).

The guidance document never specifically states that bus drivers should be <u>trained to administer epinephrine</u> using cartridge injectors or that they should actually do so in an emergency. This point is strongly supported by the guidance document itself, which identifies the types of adult staff members that should be trained in the administration of epinephrine (*e.g.*, supervisory adults during gym and recess or after-school programs – see pages 18, 29, 32, 33, 34, and 36), but <u>never specifically states that bus drivers should administer the medication</u> (see pages 17 and 35).

## IV.   **PLAINTIFF'S REQUEST FOR A PRELIMINARY JUNCTION SHOULD BE DENIED**

On these facts which are not, and cannot be controverted, the School District is <u>not</u> entitled to a preliminary injunction. As noted, there is no contractual obligation to administer epinephrine. Absent a contractual obligation, the School District must show a legal obligation that grows out of law or regulation requiring a bus company and/or its

- 7 -

employee bus drivers to administer epinephrine to school children they transport. Simply put, there is no such law or regulation.

With respect to irreparable injury, there is none. In her affidavit submitted in support of the School District's application for preliminary injunction, Mary Athey Jennings, Ph.D., who is the Superintendent of Schools for the School District, states, in paragraphs 26 and 27, as follows:

> 26.    In reliance upon Laidlaw's assumption of the duty to provide coverage for the administration of epipens on school buses, the school district did not budget for the training of additional personnel in epipen administration, the placement of monitors on school buses or the special transportation of children who are prescribed epipens, for 2004-2005.
>
> 27.    Since learning of Laidlaw's refusal to perform this function, the school district has had to expend funds for this unbudgeted cost. During this entire time, Laidlaw has been receiving its full fee under the school bus transportation contract.[1]

The Superintendent of Schools admits, as she must, that the School District's problem is about money and finding alternatives that cost additional money not budgeted. The Superintendent acknowledges that there are ways to protect the children being transported on the buses – the training of additional personnel in epi-pen administration, the placement of monitors on school buses, or the special transportation of children who are prescribed for epi-pens, for 2004-2005. Because the bus contract expires at the end of the 2006 school year, the time of additional expense is delimited, and therefore calculable in money damages if the School District were to succeed in this litigation.

---

[1] Laidlaw does not concede but rather specifically reserves its right to challenge, and has challenged in its Answer, "assumption of the duty" as asserted, but, for the sake of completeness, Laidlaw sets forth paragraphs 26 and 27 of the affidavit in full.

## V.    **CONCLUSION**

The application for preliminary injunction should be denied, the School District

having failed to show a likelihood of success on the merits or irreparable injury.

Respectfully submitted,

LAIDLAW TRANSIT, INC.
By its attorneys,


__/s/_____
James J. Marcellino, Esq.
Alexander Howard, III, Esq.
McDermott Will & Emery, LLP
28 State Street
Boston, MA 02109
(617) 535-4000

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I have caused to be served a true and correct copy of

the Defendant's Memorandum in Opposition to Preliminary Injunction, by facsimile and

hand delivery upon plaintiff's counsel as follows:

> Rosann DiPietro, Esq.
> LONG & LONG
> 21 McGrath Highway, Suite 306
> Quincy, Massachusetts 02169
>
> Howard L. Greenspan, Esq.
> 220 Broadway
> Lynnfield, MA 01940

> _____/s/_____
> James J. Marcellino, Esq.

Dated:  June 6, 2005

**A**



THE COMMONWEALTH OF MASSACHUSETTS
William Francis Galvin, Secretary of the Commonwealth
State Publications and Regulations

## REGULATION FILING AND PUBLICATION

1 Regulation Chapter, Number & Heading:     **105 CMR 200.000 - 299.000**

2. Name of Agency:     **DEPARTMENT OF PUBLIC HEALTH**

3 This document is reprinted from the Code of Massachusetts Regulations and contains the following:

| 105 CMR | | |
|---|---|---|
| | 200.000 | Physical Examination of School Children |
| | 201.000 - 204.000 | Reserved |
| | 205.000 | Minimum Standards Governing Medical Records & the Conduct of Physical Examinations in Correctional Facilities. |
| | 206.000 - 209.000 | Reserved |
| | 210.000 | the Administration of Prescription Medications in Public & Private Schools. |
| | 211.000 - 219.000 | Reserved |
| | 220.000 | Immunization of Students Before Admission to School. |
| | 221.000 | Promoting Awareness of Meningococcal Disease and Vaccine |
| | 222.00 - 229.000 | Reserved |
| | 230.000 | Healthy Start Program |
| | 231.000 - 239.000 | Reserved |
| | 240.000 | Criteria for Insurance Coverage of Bone Marrow Transplants for Breast Cancer Patients. |
| | 241.000 - 259.000 | Reserved |
| | 260.000 | Prohibition Against Certain Fishing in New Bedford. |
| | 261.000 - 269.000 | Reserved |
| | 270.000 | Testing of Newborn Children for Treatable Diseases. |
| | 271.000 - 299.000 | Reserved |

Under the Provisions of Massachusetts General Laws, Chapter 30A, § 6. and Chapter 233, § 75.
this document may be used as evidence of the original documents on file with the Secretary of the Commonwealth

Compiled as in full force and effect:     02/11/2005

```
105 CMR 200-299
105CR200-299.00
███████████████  $4.35
      100024
```

A true copy attest:

*William Francis Galvin*

WILLIAM FRANCIS GALVIN
Secretary of the Commonwealth

105 CMR:  DEPARTMENT OF PUBLIC HEALTH

105 CMR 210 000:        THE ADMINISTRATION OF PRESCRIPTION MEDICATIONS IN PUBLIC
                        AND PRIVATE SCHOOLS

Section

210 001:  Purpose
210 002:  Definitions
210 003:  Policies Governing the Administration of Prescription Medications in Schools
210.004:  Policies Regarding Delegation of Prescription Medication Administration
210.005:  Responsibilities of the School Nurse Regarding Prescription Medication Administration
210 006:  Self Administration of Prescription Medications
210 007:  Training of School Personnel Responsible for Administering Prescription Medications
210.008:  Handling, Storage and Disposal of Prescription Medications
210 009:  Documentation and Record-Keeping
210 100:  Administration of Epinephrine

210.001:  Purpose

        The purpose of 105 CMR 210.000 is to provide minimum standards for the safe and proper
administration of prescription medications to students in the Commonwealth's public and private
primary and secondary schools  105 CMR 210.000 permit school nurses to delegate
responsibility for administration of prescription medications to trained, nursing-supervised
school personnel, provided the school district or private school registers with the Department
of Public Health  The aim of 105 CMR 210 000 is to ensure that students requiring prescription
medication administration during the school day will be able to attend school and to ensure that
prescription medications are safely administered in schools.  105 CMR 210 000 encourages
collaboration between parents or guardians and the school in this effort.

210.002:  Definitions

        As used in 105 CMR 210.000, the following words, unless the context clearly requires
otherwise, shall have the following meanings:

        Administration of Medication means the direct application of a prescription medication by
inhalation, ingestion, or by any other means to the body of a person

        Prescription Medication means any medication which by federal law may be obtained only by
prescription.

        Cumulative Health Record means the cumulative health record of a pupil as specified under
M.G.L. c. 71

        Department means the Massachusetts Department of Public Health

        Investigational New Drug means any medication with an approved investigational new drug
(IND) application on file with the Food and Drug Administration (FDA) which is being
scientifically tested and clinically evaluated to determine its efficacy, safety and side effects and
which has not yet received FDA approval.

        Licensed Practical Nurse means an individual who is a graduate of an approved practical nursing
program, and who is currently licensed as a practical nurse pursuant to M.G.L. c. 112

        Licensed Prescriber means a health care provider who is legally authorized to prescribe
medication pursuant to M.G.L. c 94C and applicable federal laws and regulations

        Parenteral Medication means any medication administered in a manner other than by the
digestive tract or topical application, as by intravenous, intramuscular, subcutaneous, or
intradermal injection

105 CMR:   DEPARTMENT OF PUBLIC HEALTH

210.002:   continued



Physician means a doctor of medicine or osteopathy licensed to practice medicine in Massachusetts or in another state.

School Nurse means a nurse practicing in a school setting, who is:
(1)   a graduate of an approved school for professional nursing;
(2)   currently licensed as a Registered Nurse pursuant to M.G.L. c 112; and
(3)   appointed by a School Committee or a Board of Health in accordance with M.G.L. c 71, §§ 53, 53A, and 53B or, in the case of a private school, by the Board of Trustees.

School Physician means a physician appointed by a School Committee or Board of Health in accordance with M.G.L. c 71, §§ 53, 53A, and 53B or, in the case of a private school, by the Board of Trustees.

Supervision means guidance by a qualified school nurse to accomplish a task, with initial direction and instruction concerning the task and periodic inspection and oversight of activities related to the task.

Teacher for the purpose of 105 CMR 210.000, means a professional school employee who:
(1)   instructs students or serves in the role of administrator below the rank of superintendent; and
(2)   is employed by a School Committee or Board of Trustees.

210.003:   Policies Governing the Administration of Prescription Medications in Schools

(A)   The School Committee or Board of Trustees, consulting with the Board of Health where appropriate, shall adopt policies and procedures governing the administration of prescription medications and self administration of prescription medications within the school system, following development of a proposal by the school nurse, in consultation with the school physician. Review and revision of such policies and procedures shall occur as needed but at least every two years. At a minimum, these policies shall include:
(1)   designation of a school nurse as supervisor of the prescription medication administration program in a school;
(2)   documentation of the administration of prescription medications;
(3)   response to a medication emergency;
(4)   storage of prescription medications;
(5)   reporting and documentation of medication errors;
(6)   dissemination of information to parents or guardians. Such information shall include an outline of a school's medication policies and shall be available to parents and guardians upon request;
(7)   procedures for resolving questions between the school and a parent or guardian regarding administration of medications. Such procedures shall provide for and encourage the participation of the parent or guardian. Existing procedures for resolution of differences may be used whenever appropriate.

(B)   The School Committee or Board of Trustees shall submit these policies and procedures to the Department of Public Health upon request.

210.004:   Policies Regarding Delegation of Prescription Medication Administration

(A)   The School Committee or Board of Trustees, consulting with the Board of Health where appropriate, may approve a proposal, developed by the school nurse and school physician, to permit the administration of prescription medications to be delegated by the school nurse to unlicensed school personnel. Such delegation may occur only if the school district registers with the Department of Public Health pursuant to the applicable provisions of 105 CMR 700.000 and complies with the requirements of 105 CMR 210.000.

105 CMR:  DEPARTMENT OF PUBLIC HEALTH

210 004:  continued

> (B)  In accordance with the proposal of the school nurse and school physician, the School Committee or Board of Trustees may approve categories of unlicensed school personnel to whom the school nurse may delegate responsibility for prescription medication administration
>
> > (1)  Said categories of personnel may include administrative and teaching staff, licensed health personnel, health aides and secretaries
> >
> > > (a)  For the purposes of 105 CMR 210 000, health aide shall mean an unlicensed employee of the school district who is generally supervised by the school nurse and performs those health-related duties defined by the school nurse, the School Committee, Board of Health or Board of Trustees
> > >
> > > (b)  For the purpose of administering emergency prescription medication to an individual child, including parenteral administration of medication pursuant to 105 CMR 210 004(B)(4), the school nurse may identify individual school personnel or additional categories  Said school personnel shall be listed on the medication administration plan developed in accordance with 105 CMR 210.005(E) and receive training in the administration of emergency medication to a specific child
> >
> > (2)  An individual in an approved category may be authorized to administer prescription medication if he/she meets the following criteria:
> >
> > > (a)  is a high school graduate or its equivalent;
> > >
> > > (b)  demonstrates sound judgment;
> > >
> > > (c)  is able to read and write English;
> > >
> > > (d)  is able to communicate with the student receiving the prescription medication or has ready access to an interpreter when needed;
> > >
> > > (e)  is able to meet the requirements of 105 CMR 210 000 and follow nursing supervision;
> > >
> > > (f)  is able to respect and protect the student's confidentiality; and
> > >
> > > (g)  has completed an approved training program pursuant to 105 CMR 210 007
> >
> > (3)  A school nurse shall be on duty in the school system while prescription medications are being administered by designated unlicensed school personnel, and available by telephone should consultation be required
> >
> > (4)  The administration of parenteral medications may not be delegated, with the exception of epinephrine administered in accordance with 105 CMR 210 100
> >
> > (5)  Prescription medications to be administered pursuant to p r n ("as needed") orders may be administered by authorized school personnel after an assessment by or consultation with the school nurse for each dose
> >
> > (6)  For each school, an updated list of unlicensed school personnel who have been trained in the administration of prescription medications shall be maintained  Upon request, a parent shall be provided with a list of school personnel authorized to administer prescription medications

210.005:  Responsibilities of the School Nurse Regarding Prescription Medication Administration

> (A)  The school nurse, in consultation with the school physician and the school health advisory committee, if established, shall develop policies and procedures consistent with 105 CMR 210 000 for approval by the School Committee or Board of Trustees, in consultation with the Board of Health where appropriate
>
> (B)  The school nurse shall have responsibility for the development and management of the prescription medication administration program  Such responsibility shall be delineated in policies and procedures adopted by the School Committee or Board of Trustees, in consultation with the Board of Health where appropriate

105 CMR:  DEPARTMENT OF PUBLIC HEALTH

210.005:  continued

(C)  The school nurse, in consultation with the school physician, shall have final decision-making authority with respect to delegating administration of prescription medications to unlicensed personnel in school systems registered with the Department of Public Health

(D)  Medication Orders.

(1)  The school nurse shall ensure that there is a proper medication order from a licensed prescriber which is renewed as necessary including the beginning of each academic year. A telephone order or an order for any change in prescription medication shall be received only by the school nurse. Any verbal order must be followed by a written order within three school days. Whenever possible, the medication order shall be obtained, and the medication administration plan specified in 105 CMR 210.005(E) shall be developed before the student enters or re-enters school.

(a)  In accordance with standard medical practice, a medication order from a licensed prescriber shall contain:

1.  the student's name;
2.  the name and signature of the licensed prescriber and business and emergency phone numbers;
3.  the name, route and dosage of medication;
4.  the frequency and time of medication administration;
5.  the date of the order;
6.  a diagnosis and any other medical condition(s) requiring medication, if not a violation of confidentiality or if not contrary to the request of a parent, guardian or student to keep confidential;
7.  specific directions for administration.

(b)  Every effort shall be made to obtain from the licensed prescriber the following additional information, as appropriate:

1.  any special side effects, contraindications and adverse reactions to be observed;
2.  any other medications being taken by the student;
3.  the date of return visit, if applicable

(2)  Special Medication Situations

(a)  For short-term prescription medications, i.e., those requiring administration for ten school days or fewer, the pharmacy-labelled container may be used in lieu of a licensed prescriber's order. If the nurse has a question, she may request a licensed prescriber's order.

(b)  For "over-the-counter" medications, i.e., non-prescription medications, the school nurse shall follow the Board of Registration in Nursing's protocols regarding administration of over-the-counter medications in schools.

(c)  Investigational new drugs may be administered in the schools with (1) a written order by a licensed prescriber, (2) written consent of the parent or guardian, and (3) a pharmacy-labelled container for dispensing. If there is a question, the school nurse may seek consultation and/or approval from the school physician to administer the medication in a school setting.

(3)  The school nurse shall ensure that there is a written authorization by the parent or guardian which contains:

(a)  the parent or guardian's printed name and signature and a home and emergency phone number;
(b)  a list of all medications the student is currently receiving, if not a violation of confidentiality or contrary to the request of the parent, guardian or student that such medication not be documented;
(c)  approval to have the school nurse or school personnel designated by the school nurse administer the prescription medication;
(d)  persons to be notified in case of a medication emergency in addition to the parent or guardian and licensed prescriber

105 CMR:   DEPARTMENT OF PUBLIC HEALTH

210.005:   continued

(E)   Medication Administration Plan:  The school nurse, in collaboration with the parent or guardian whenever possible, shall establish a medication administration plan for each student receiving a prescription medication. Whenever possible, a student who understands the issues of medication administration shall be involved in the decision-making process and his/her preferences respected to the maximum extent possible.   If appropriate, the medication administration plan shall be referenced in any other health or educational plan developed pursuant to St. 1972, c. 766 the Massachusetts Special Education Law (Individual Education Plan under Chapter 766) or federal laws, such as the Individuals with Disabilities Education Act (IDEA) or Section 504 of the Rehabilitation Act of 1973.

   (1)  Prior to the initial administration of the prescription medication, the school nurse shall assess the child's health status and develop a medication administration plan which includes:
      (a)  the name of the student;
      (b)  a medication order from a licensed prescriber, which meets the requirements of 105 CMR 210.005(D)(1);
      (c)  the signed authorization of the parent or guardian, which meets the requirements of 105 CMR 210.005(D)(3);
      (d)  any known allergies to food or medications;
      (e)  the diagnosis, unless a violation of confidentiality or the parent, guardian or student requests that it not be documented;
      (f)  any possible side effects, adverse reactions or contraindications;
      (g)  the quantity of prescription medication to be received by the school from the parent or guardian;
      (h)  the required storage conditions;
      (i)  the duration of the prescription;
      (j)  the designation of unlicensed school personnel, if any, who will administer the prescription medication to the student in the absence of the nurse, and plans for back-up if the designated personnel are unavailable;
      (k)  plans, if any, for teaching self administration of the prescription medication;
      (l)  with parental permission, other persons, including teachers, to be notified of medication administration and possible adverse effects of the medication;
      (m)  when appropriate, the location where the administration of the prescription medication will take place;
      (n)  a plan for monitoring the effects of the medication;
      (o)  provision for prescription medication administration in the case of field trips and other short-term special school events. Every effort shall be made to obtain a nurse or school staff member trained in prescription medication administration to accompany students at special school events.  When this is not possible, the school nurse may delegate prescription medication administration to another responsible adult. Written consent from the parent or guardian for the named responsible adult to administer the prescription medication shall be obtained. The school nurse shall instruct the responsible adult on how to administer the prescription medication to the child.

(F)   Developing Procedures for Administration of Prescription Medications.
   (1)  The school nurse shall develop procedures for the administration of prescription medications which shall include the following:
      (a)  A procedure to ensure the positive identification of the student who receives the medication;
      (b)  A system for documentation and record-keeping which meets the requirements of 105 CMR 210.009.
   (2)  The school nurse shall develop a system of documenting observations by the nurse or school personnel and communicating significant observations relating to prescription medication effectiveness and adverse reactions or other harmful effects to the child's parent or guardian and/or licensed prescriber;
   (3)  The school nurse shall develop and implement procedures regarding receipt and safe storage of prescription medications;

105 CMR:  DEPARTMENT OF PUBLIC HEALTH

210.005:  continued

(4)  The school nurse shall develop procedures for responding to medication emergencies, *i.e.*, any reaction or condition related to administration of medication which poses an immediate threat to the health or well-being of the student.  This includes maintaining a list of persons, with their phone numbers, to be contacted as appropriate, in addition to the parent/guardian, school nurse, licensed prescriber and other persons designated in the medication administration plan.  Such persons may include other school personnel, the school physician, clinic or emergency room staff, ambulance services and the local poison control center;

(5)  The school nurse shall develop procedures and forms for documenting and reporting prescription medication errors.  The procedures shall specify persons to be notified in addition to the parent or guardian and nurse, including the licensed prescriber or school physician if there is a question of potential harm to the student.  A medication error includes any failure to administer prescription medication as prescribed for a particular student, including failure to administer the prescription medication:

(a)  within appropriate time frames;

(b)  in the correct dosage;

(c)  in accordance with accepted practice;

(d)  to the correct student.

(6)  The school nurse shall develop procedures to review reports of medication errors and take necessary steps to ensure appropriate prescription medication administration in the future.

(G)  Delegation/Supervision.  When a School Committee or Board of Trustees, in consultation with the Board of Health where appropriate, has registered with the Department of Public Health and authorized categories of unlicensed school personnel to administer prescription medications, such personnel shall be under the supervision of the school nurse for the purposes of 105 CMR 210.000.  The School Committee or Board of Trustees, in consultation with the Board of Health where appropriate, shall provide assurance that sufficient school nurse(s) are available to provide proper supervision of unlicensed school personnel.  Responsibilities for supervision, at a minimum, shall include the following:

(1)  After consultation with the principal or administrator responsible for a given school, the school nurse shall select, train and supervise the specific individuals, in those categories of school personnel approved by the School Committee or Board of Trustees, in consultation with the Board of Health where appropriate, who may administer prescription medications.  When necessary to protect student health and safety, the school nurse may rescind such selection.

(2)  The number of unlicensed school personnel to whom responsibility for prescription medication administration may be delegated is to be determined by:

(a)  the number of unlicensed school personnel the school nurse can adequately supervise on a weekly basis, as determined by the school nurse;

(b)  the number of unlicensed school personnel necessary, in the nurse's judgment, to ensure that the prescription medications are properly administered to each student.

(3)  The school nurse shall support and assist persons who have completed the training specified in 105 CMR 210.007 to prepare for and implement their responsibilities related to the administration of prescription medication.

(4)  The first time that an unlicensed school personnel administers medication, the delegating nurse shall provide supervision at the work site.

(5)  The degree of supervision required for each student shall be determined by the school nurse after an evaluation of the  appropriate factors involved in protecting the student's health, including but not limited to the following:

(a)  health condition and ability of the student;

(b)  the extent of training and capability of the unlicensed school personnel to whom the prescription medication administration is delegated;

(c)  the type of prescription medication; and

(d)  the proximity and availability of the school nurse to the unlicensed person who is performing the prescription medication administration.

105 CMR:  DEPARTMENT OF PUBLIC HEALTH

210.005:  continued

(6)  For the individual child, the school nurse shall:
(a)  determine whether or not it is medically safe and appropriate to delegate prescription medication administration;
(b)  administer the first dose of the prescription medication, if:
1.  there is reason to believe there is a risk to the child as indicated by the health assessment, or
2.  the student has not previously received this prescription medication in any setting;
(c)  review the initial orders, possible side effects, adverse reactions and other pertinent information with the person to whom prescription medication administration has been delegated;
(d)  provide supervision and consultation as needed to ensure that the student is receiving the prescription medication appropriately  Supervision and consultation may include record review, on-site observation and/or assessment;
(e)  review all documentation pertaining to prescription medication administration on a biweekly basis or more often if necessary.

(H)  In accordance with standard nursing practice, the school nurse may refuse to administer or allow to be administered any prescription medication which, based on her/his individual assessment and professional judgment, has the potential to be harmful, dangerous or inappropriate.  In these cases, the parent/guardian and licensed prescriber shall be notified immediately by the school nurse.

(I)  For the purposes of 105 CMR 210.000, a Licensed Practical Nurse functions under the general supervision of the school nurse who has delegating authority.

(J)  The school nurse shall have a current pharmaceutical reference available for her/his use, such as the *Physician's Desk Reference* (P.D.R.) or *U.S.P. DI* (Dispensing Information), *Facts and Comparisons*.

210.006:  Self Administration of Prescription Medications

(A)  Consistent with school policy, students may self administer prescription medication provided that certain conditions are met.  For the purposes of 105 CMR 210.000, "self administration" shall mean that the student is able to consume or apply prescription medication in the manner directed by the licensed prescriber, without additional assistance or direction.

(B)  The school nurse may permit self medication of prescription medication by a student provided that the following requirements are met:
(1)  the student, school nurse and parent/guardian, where appropriate, enter into an agreement which specifies the conditions under which prescription medication may be self administered;
(2)  the school nurse, as appropriate, develops a medication administration plan (105 CMR 210.005(E) which contains only those elements necessary to ensure safe self administration of prescription medication;
(3)  the school nurse evaluates the student's health status and abilities and deems self administration safe and appropriate.  As necessary, the school nurse shall observe initial self-administration of the prescription medication;
(4)  the school nurse is reasonably assured that the student is able to identify the appropriate prescription medication, knows the frequency and time of day for which the prescription medication is ordered, and follows the school self administration protocols;
(5)  there is written authorization from the student's parent or guardian that the student may self medicate, unless the student has consented to treatment under M.G.L. c. 112, § 12F or other authority permitting the student to consent to medical treatment without parental permission;

105 CMR: DEPARTMENT OF PUBLIC HEALTH

210.006: continued

(6) if requested by the school nurse, the licensed prescriber provides a written order for self administration;

(7) the student follows a procedure for documentation of self-administration of prescription medication;

(8) the school nurse establishes a policy for the safe storage of self-administered prescription medication and, as necessary, consults with teachers, the student and parent/guardian, if appropriate, to determine a safe place for storing the prescription medication for the individual student, while providing for accessibility if the student's health needs require it. This information shall be included in the medication administration plan. In the case of an inhaler or other preventive or emergency medication, whenever possible, a backup supply of the prescription medication shall be kept in the health room or a second readily available location;

(9) the school nurse develops and implements a plan to monitor the student's self administration, based on the student's abilities and health status. Monitoring may include teaching the student the correct way of taking the prescription medication, reminding the student to take the prescription medication, visual observation to ensure compliance, recording that the prescription medication was taken, and notifying the parent, guardian or licensed prescriber of any side effects, variation from the plan, or the student's refusal or failure to take the prescription medication;

(10) with parental/guardian and student permission, as appropriate, the school nurse may inform appropriate teachers and administrators that the student is self-administering a prescription medication.

210.007: Training of School Personnel Responsible for Administering Prescription Medications

(A) All prescription medications shall be administered by properly trained and supervised school personnel under the direction of the school nurse.

(B) Training shall be provided under the direction of the school nurse.

(C) At a minimum, the training program shall include content standards and a test of competency developed and approved by the Department of Public Health in consultation with the Board of Registration in Nursing and practicing school nurses.

(D) Personnel designated to administer prescription medications shall be provided with the names and locations of school personnel who have documented certification in cardiopulmonary resuscitation. Schools should make every effort to have a minimum of two school staff members with documented certification in cardiopulmonary resuscitation present in each school building throughout the day.

(E) The school nurse shall document the training and evidence of competency of unlicensed personnel designated to assume the responsibility for prescription medication administration.

(F) The school nurse shall provide a training review and informational update at least annually for those school staff authorized to administer prescription medications.

210.008: Handling, Storage and Disposal of Prescription Medications

(A) A parent, guardian or parent/guardian-designated responsible adult shall deliver all prescription medications to be administered by school personnel or to be taken by self-medicating students, if required by the self-administration agreement (105 CMR 210.006(B)), to the school nurse or other responsible person designated by the school nurse

(1) The prescription medication must be in a pharmacy or manufacturer labelled container.

(2) The school nurse or other responsible person receiving the prescription medication shall document the quantity of the prescription medication delivered

105 CMR:   DEPARTMENT OF PUBLIC HEALTH

210.008:   continued

(3)  In extenuating circumstances, as determined by the school nurse, the prescription medication may be delivered by other persons; provided, however, that the nurse is notified in advance by the parent or guardian of the arrangement and the quantity of prescription medication being delivered to the school

(B)  All prescription medications shall be stored in their original pharmacy or manufacturer labelled containers and in such manner as to render them safe and effective.

(C)  All prescription medications to be administered by school personnel shall be kept in a securely locked cabinet used exclusively for medications, which is kept locked except when opened to obtain medications  The cabinet shall be substantially constructed and anchored securely to a solid surface  Prescription medications requiring refrigeration shall be stored in either a locked box in a refrigerator or in a locked refrigerator maintained at temperatures of 38°F to 42°F

(D)  Access to stored prescription medications shall be limited to persons authorized to administer prescription medications and to self-medicating students, to the extent permitted by school policy developed pursuant to 105 CMR 210 006(B)(8).  Access to keys and knowledge of the location of keys shall be restricted to the maximum extent possible.  Students who are self-medicating shall not have access to other students' medications

(E)  Parents or guardians may retrieve the prescription medications from the school at any time

(F)  No more than a 30 school day supply of the prescription medication for a student shall be stored at the school

(G)  Where possible, all unused, discontinued or outdated prescription medications shall be returned to the parent or guardian and the return appropriately documented. In extenuating circumstances, with parental consent when possible, such prescription medications may be destroyed by the school nurse in accordance with any applicable policies of the Massachusetts Department of Public Health, Division of Food and Drugs

210.009:   Documentation and Record-Keeping

(A)  Each school where prescription medications are administered by school personnel shall maintain a medication administration record for each student who receives prescription medication during school hours
(1)  Such record at a minimum shall include a daily log and a medication administration plan, including the medication order and parent/guardian authorization
(2)  The medication administration plan shall include the information as described in 105 CMR 210 005(E).
(3)  The daily log shall contain:
   (a)  the dose or amount of prescription medication administered;
   (b)  the date and time of administration or omission of administration, including the reason for omission;
   (c)  the full signature of the nurse or designated unlicensed school personnel administering the prescription medication  If the prescription medication is given more than once by the same person, he/she may initial the record, subsequent to signing a full signature
(4)  The school nurse shall document in the medication administration record significant observations of the prescription medication's effectiveness, as appropriate, and any adverse reactions or other harmful effects, as well as any action taken.
(5)  All documentation shall be recorded in ink and shall not be altered

105 CMR:  DEPARTMENT OF PUBLIC HEALTH

210.009:  continued

(6)  With the consent of the parent, guardian, or student where appropriate, the completed prescription medication administration record and records pertinent to self administration shall be filed in the student's cumulative health record  When the parent, guardian or student, where appropriate, objects, these records shall be regarded as confidential medical notes and shall be kept confidential, except as provided in 105 CMR 210.000

(B)  Medication errors, as defined in 105 CMR 210.005(F)(5), shall be documented by the school nurse on an accident/incident report form  These reports shall be retained in a location as determined by school policy and made available to the Department of Public Health upon request  All suspected diversion or tampering of drugs shall be reported to the Department of Public Health, Division of Food and Drugs  All medication errors resulting in serious illness requiring medical care shall be reported to the Department of Public Health, Bureau of Family and Community Health

(C)  The school district shall comply with the Department of Public Health's reporting requirements for prescription medication administration in the schools

(D)  The Department of Public Health may inspect any individual student medication record or record relating to the administration or storage of prescription medications without prior notice to ensure compliance with 105 CMR 210.000

210.100:  Administration of Epinephrine

(A)  A public school district or non-public school, as defined by the Massachusetts Department of Education, may register with the Department for the limited purpose of permitting properly trained school personnel to administer epinephrine by auto injector in a life-threatening situation during the school day when a school nurse is not immediately available, including field trips, provided that the following conditions are met:
    (1)  the school committee or, in the case of a non-public school, the chief administrative officer, approves policies developed by the designated school nurse leader or, in the absence of a school nurse leader, a school nurse with designated responsibility for management of the program ("responsible school nurse") governing administration of epinephrine by auto injector  This approval must be renewed every two years;
    (2)  the school committee or chief administrative officer provides an assurance to the Department that the requirements of 105 CMR 210.000 will be met;
    (3)  in consultation with the school physician, the designated school nurse leader or responsible school nurse manages and has final decision making authority about the program  This person, or school nurses designated by this person, shall select the individuals authorized to administer epinephrine by auto injector. Persons authorized to administer epinephrine shall meet the requirements of 105 CMR 210.004(B)(2);
    (4)  the school personnel authorized to administer epinephrine by auto injector are trained and tested for competency by the designated school nurse leader or responsible school nurse, or school nurses designated by this person, in accordance with standards and a curriculum established by the Department
        (a)  The designated school nurse leader or responsible school nurse, or school nurses designated by this person, shall document the training and testing of competency
        (b)  The designated school nurse leader or responsible school nurse, or a designee, shall provide a training review and informational update at least twice a year
        (c)  The training, at a minimum, shall include:
            1  procedures for risk reduction
            2  recognition of the symptoms of a severe allergic reaction;
            3  the importance of following the medication administration plan;
            4  proper use of the auto-injector; and
            5  requirements for proper storage and security, notification of appropriate persons following administration, and record keeping
        (d)  The school shall maintain and make available upon request by parents or staff a list of those school personnel authorized and trained to administer epinephrine by auto injector in an emergency, when the school nurse is not immediately available;

105 CMR:  DEPARTMENT OF PUBLIC HEALTH

210 100:  continued

(5) epinephrine shall be administered only in accordance with an individualized medication administration plan satisfying the applicable requirements of 105 CMR 210 005(E) and 210 009(A)(6). updated every year, which includes the following:

(a)  a diagnosis by a physician that the child is at risk of a life threatening allergic reaction and a medication order containing proper dosage and indications for administration of epinephrine;

(b)  written authorization by a parent or legal guardian;

(c)  home and emergency number for the parent(s) or legal guardian(s), as well as the names(s) and phone number(s) of any other person(s) to be notified if the parent(s) or guardian(s) are unavailable;

(d)  identification of places where the epinephrine is to be stored, following consideration of the need for storage:

1  at one or more places where the student may be most at risk;

2  in such a manner as to allow rapid access by authorized persons, including possession by the student when appropriate; and

3  in a place accessible only to authorized persons  The storage location(s) should be secure, but not locked during those times when epinephrine is most likely to be administered, as determined by the school nurse;

(e)  a list of the school personnel who would administer the epinephrine to the student in a life threatening situation when a school nurse is not immediately available;

(f)  a plan for comprehensive risk reduction for the student, including preventing exposure to specific allergens; and

(g)  an assessment of the student's readiness for self-administration and training, as appropriate

(6)  when epinephrine is administered, there shall be immediate notification of the local emergency medical services system (generally 911), followed by notification of the student's parent(s) or guardian(s) or, if the parent(s)or guardian(s) are not available, any other designated person(s), the school nurse, the student's physician, and the school physician, to the extent possible;

(7)  there shall be procedures, in accordance with any standards established by the Department, for:

(a)  developing the medication administration plan;

(b)  developing general policies for the proper storage of medication, including limiting access to persons authorized to administer the medication and returning unused or outdated medication to a parent or guardian whenever possible;

(c)  recording receipt and return of medication by the school nurse;

(d)  documenting the date and time of administration;

(e)  notifying appropriate parties of administration and documenting such notification;

(f)  reporting medication errors in accordance with 105 CMR 210 005(F)(5);

(g)  reviewing any incident involving administration of epinephrine to determine the adequacy of the response and to consider ways of reducing risks for the particular student and the student body in general;

(h)  planning and working with the emergency medical system to ensure the fastest possible response;

(i)  disposing properly of used epinephrine injector;

(j)  submitting a written report to the Department of Public Health each time epinephrine is administered to a student or staff, on a form obtained from the Department;

(k)  permitting the Department of Public Health to inspect any record related to the administration of epinephrine without prior notice, to ensure compliance with 105 CMR 210 100

(B)  Epinephrine may be administered in accordance with 105 CMR 210 000 in before and after school programs offered or provided by a school, such as athletic programs, special school events and school-sponsored programs on week-ends, provided that the public school district or non-public school is registered with the Department pursuant to 105 CMR 210 100(A) and meets the requirements set forth in 105 CMR 210 100(B)

(1)  Epinephrine may be administered in such before and after school programs and special events, to students attending the school where the epinephrine is to be administered, provided that the following requirements in 105 CMR 210 1000(B)(1)(a) through (d) are met:

105 CMR:  DEPARTMENT OF PUBLIC HEALTH

210 100:  continued

(a)  school committee or chief administrative officer in a non-public school approves, in the policy developed in accordance with 105 CMR 210.100(A)(1), administration of epinephrine in such programs The policy shall identify the school official(s), along with a school nurse for each school designated by the school nurse leader or responsible nurse, responsible for determining which before and after school programs and special events are to be covered by the policy;

(b)  the designated school nurse approves administration of epinephrine in that program and selects the properly trained person(s) to administer the epinephrine;

(c)  the school complies with the requirements of 105 CMR 210 100(A), including immediate notification of emergency medical services following administration of epinephrine, but need not comply with the requirement of 105 CMR 210 004(B)(3); and

(d)  the program is not licensed by another state agency, in which case the regulations promulgated by that state agency will apply

(2)  Epinephrine may be administered in such before and after school programs and special events to students from another school or school district if approved in the school policy developed pursuant to 105 CMR 210 100(A)(1) and in accordance with the requirements in 105 CMR 210 00(B)(2)(a) through (d)

(a)  The school complies with the requirements of 105 CMR 210 100(A) and 210 100(B)(1), including immediate notification of emergency medical services following administration of epinephrine, except as provided in 105 CMR 210 100(B)(2)(d)

(b)  In the event the student is accompanied by school personnel from the sending school, such personnel whenever possible, shall assume responsibility for ensuring that the epinephrine is brought properly stored and administered as necessary, in accordance with the medication administration plan developed by the sending school in accordance with 105 CMR 210 100(A)(5)

(c)  In the event the student is not accompanied by school personnel from the sending school or such personnel are not trained in the administration of epinephrine, the receiving school may, in its discretion assume responsibility for administering epinephrine, provided that:

1  the designated school nurse in the receiving school is provided with adequate prior notice of the request which shall be at least one week in advance unless otherwise specified by the designated school nurse;

2  the designated school nurse in the receiving school approves administration of epinephrine for that student;

3  the designated school nurse selects properly trained person(s) to administer the epinephrine; and

the student provides the designated school nurse or the person(s) selected by the

4  designated school nurse to administer epinephrine with the medication to be administered

(d)  If the receiving school assumes responsibility for administering epinephrine, whenever possible, the student shall provide the designated school nurse in the receiving school with copy of the medication administration plan developed in accordance with 105 CMR 210 005(E) The plan shall be provided to the designated school nurse in timely fashion in accordance with procedures established by the nurse If no medication administration plan is provided, the student at a minimum shall provide to the designated school nurse in the receiving school:

1  written authorization and emergency phone numbers from a parent or guardian;

2  a copy of a medication order from a licensed provider; and

3  any specific indications or instructions for administration

(C)  Administration of epinephrine shall be governed solely by 105 CMR 210 100 The provisions of 105 CMR 210.004(B)(5) and 210 005(E)(1)(o) shall not be applicable to the administration of epinephrine

REGULATORY AUTHORITY

105 CMR 210 000:  M G L  c 94C, § 7(g); c 71, § 54B

105 CMR:   DEPARTMENT OF PUBLIC HEALTH

(105 CMR 211.000 through 219.000:  RESERVED)

105 CMR:   DEPARTMENT OF PUBLIC HEALTH

(PAGES 1183 THROUGH 1196 ARE RESERVED FOR FUTURE USE.)