## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GROTON-DUNSTABLE REGIONAL SCHOOL DISTRICT** )<br><br>)<br>)<br>**Plaintiff** )<br>)<br>**v.** )<br>)<br>**LAIDLAW TRANSIT, INC.** )<br>)<br>**Defendant** )<br>) | **Civil Action No. 05-10978-PBS** |

## MOTION TO AMEND TO ADD
## <u>DECLARATORY JUDGMENT COUNTERCLAIM</u>

The Defendant, Laidlaw Transit, Inc. ("Laidlaw") hereby moves to amend its Answer by adding a counterclaim for declaratory judgment as shown on the Amended Answer and Counterclaim attached hereto.

There is a count for declaratory judgment, Count Three, in the plaintiff's complaint. Because the plaintiff issued a new invitation for bid on July 6, 2005, soliciting bids for a contract that extends for three years, with a two year extension, and out of an excess of caution regarding the reach of the School District's request for declaratory judgment, Laidlaw seeks to amend to add a Declaratory Judgment Counterclaim. The adding of the counterclaim for declaratory judgment will not delay trial, which is presently scheduled for August 1, 2005.

The School District may assert that it is merely following a suggestion made by the Court at the June 15, 2005 hearing on preliminary injunction (the transcript of which

1

is also attached hereto.) The Court suggested the School District get another bus company. Laidlaw understood that the Court was dealing with questions of irreparable harm and was inquiring about a new bus company's coming in for the fall of 2005. The Court did not suggest, and it was not argued at the hearing by either party, what the consequences would be of the issuance by the School District of a new invitation for bid. Laidlaw asserts that issuance of the new invitation for bid is a repudiation of the existing contract and a breach of the implied covenant of good faith and fair dealing.

<div style="margin-left:40%">

Respectfully submitted,

Laidlaw Transit, Inc.
By its attorney,


/s/ James J. Marcellino
James J. Marcellino (BBO#318840)
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
(617) 535-4000

</div>

Dated: July 12, 2005


## RULE 7.1 CERTIFICATION

Undersigned counsel for defendant Laidlaw Transit, Inc. certifies that he has conferred with counsel for the plaintiff and the parties could not resolve the issues but narrowed the areas of dispute.

<div style="margin-left:40%">

/s/ James J. Marcellino
James J. Marcellino, Esq.

</div>

Dated: July 12, 2005

2

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I have caused to be served a true and correct copy of the Motion to Amend to Add Declaratory Judgment Counterclaim via e-mail and regular mail upon Plaintiff's counsel as follows:

> Rosann DiPietro, Esq.
> LONG & LONG
> 21 McGrath Highway, Suite 306
> Quincy, Massachusetts 02169
>
> Howard L. Greenspan, Esq.
> 220 Broadway
> Lynnfield, MA 01940


> /s/ James J. Marcellino
> James J. Marcellino, Esq.

Dated: July 12, 2005

BST99 1465005-1 071300 0012

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


```
*  *  *  *  *  *  *  *  *  *  *  *
GROTON -- DUNSTABLE              *
REGIONAL SCHOOL DISTRICT         *
               Plaintiff         *
                                 *   Civil Action
          v.                     *   No. 05-10978
                                 *
LAIDLAW TRANSIT, Inc.,           *
               Defendant         *
*  *  *  *  *  *  *  *  *  *  *  *
```


**MOTION HEARING AND SCHEDULING CONFERENCE**


Before the Honorable
United States District Court Judge Patti B. Saris


APPEARANCES:

Attorney Howard Greenspan, 220 Braodway, Lynnfield, MA
01940 and Roseann DiPietro, 21 McGrath Highway, QUincy, MA
02169, for the Plaintiff.

McDermott, Will and Emery, by Attorney James Marcellino,
28 State Street, Boston, Massachusetts 02109, for the
Defendant.

Courtroom 9 - 7th Floor
1 Courthouse Way
Boston, Massachusetts 02210
Wednesday, June 15, 2005
2:13 PM to 2:37 PM


Nancy L. Eaton - Per Diem Court Reporter
13 Short Street, Reading, MA  01867-1014
617-633-5178

1              (Judge entered the courtroom at 2:13 PM).

2              THE CLERK:   Case of Groton-Dunstable Regional

3    School District versus Laidlaw Transit Corporation, Civil Action

4    05-10978 will now be heard before this court.   Will counsel

5    please identify themselves for the record.

6              MR.  GREENSPAN:   Good afternoon, your Honor,

7    Howard Greenspan for Groton-Dunstable.

8              MS.  DiPIETRO:   Roseann DiPietro, also for

9    Groton-Dunstable.

10             MR.  MARCELLINO:   James Marcellino for Laidlaw

11   Transit.

12             THE COURT:   Let me start off with a procedural

13   problem.   As I was reviewing the papers this morning, I do not

14   believe I have a lot of plaintiffs' papers because the remand,

15   the certified record has not come over from state court.   I just

16   have the basic complaint references and the paper without all

17   the attachments.   It was certified over from state court.   It is

18   certainly not scanned into the electronic docket and I couldn't

19   find it, so unless it is sitting in a file room, I have nothing

20   that looks like that.   You didn't scan it in by any chance?

21   Have you sent it over electronically or on paper?

22             MR.  GREENSPAN:   No, your Honor.

23             THE COURT:   I will need that for starters.   I will

24   need that.   It is worth having the argument today because I

25   certainly have a sense what you are all going to argue.

1          MR.  GREENSPAN:   I can give you mine now, your

2    Honor.

3          THE COURT:   You have an extra at home?

4          MR. GREENSPAN:  We have extras.

5          THE COURT:   Just for starters.  Now, that isn't

6    just for your information.  One of the gtlitches we found in

7    CMCEF which is on removal cases it has been hard to ensure that

8    all the proper documentation gets on our electronic docket and

9    gets to me and state courts vary in how they do this.  Do you

10   have it?

11         MR.  MARCELLINO:   I have it.  Yes.  I'm all set.

12   Thank you.

13         THE COURT:   Let me start with another procedural

14   question for you.  You had a motion for preliminary injunction

15   and you have a week left of school.  Are you looking for

16   something in the week?

17         MR.  GREENSPAN:   Not necessarily for the week,

18   your Honor, but certainly we have one year left on this contract

19   which --

20         THE COURT:   Let me ask you this.  I am assuming

21   from your papers, although I haven't read it, that the contract

22   says that the bus drivers have to be trained in first aid, is

23   that right?

24         MR.  GREENSPAN:   That's correct.

25         THE COURT:   Why not fire them?  You have three

1  months.  You think they've breached the contract. What is the

2  irreparable harm?  Get yourself another bus company.

3              MR.  GREENSPAN:   I spoke to the business manager

4  about that just last week, your Honor.  He said in terms of the

5  process of doing the bid, planning the routes, things of that

6  nature, it is a lot more time consuming.

7              THE COURT:   Like what?

8              MR.  GREENSPAN:   Than youmay think to get that in

9  place for the fall.

10             THE COURT:   Like what?

11             MR.  GREENSPAN:   He indicated that was a

12 substantial amount of time and work to go into the process.

13             THE COURT:   The thing that struck me, and I

14 haven't heard argument yet, is if -- and I have to read the

15 contract, but if the contract says first aid, and if the course

16 of dealing with such that that included the epi pen, and if you

17 have affidavits that state that, maybe it was based on a

18 misunderstanding on your part, I don't know but there may be a

19 likelihood of success on breach of contract, apart from whether

20 or not school personnel under the regulations include bus

21 drivers.  I think actually the defendant might have the stronger

22 argument there or at least it is ambiguous, but the bottom line

23 is to get a preliminary injunction I have to be persuaded that

24 you can't fix it in terms of getting another bus company.

25             Now, you may win on a breach of contract.  They may

1  win on a breach of contract.  But since I couldn't possibly

2  issue this within a week --

3          MR.  GREENSPAN:   I would say we don't need it

4  within the week but we would like to figure out during the

5  summer.

6          THE COURT:   I have not been persuaded on these

7  papers if you don't need something this week, and I might even

8  be tempted to act to do it for a week because the kids who are

9  victims, the kids at this point, if a kid gets bitten by a bee,

10  and if the bus driver can administer an epi pen, and if it is in

11  the contract, I mean a week, you don't seem to be pressing for a

12  week.  Are the epi pens right now in the first aid kit?  Are

13  they there?  Mr. Marcellino?

14          MR.  MARCELLINO:   The regulation does not provide

15  --

16          THE COURT:   Forget the regulations.  Maybe yes or

17  maybe no.  First aid and I haven't seen anything that you've

18  given me that the course of dealing was that they did use the

19  epi pen.

20          MR.  MARCELLINO:   Could I have one moment to

21  confirm that?

22          (Conferring with client).

23          MR.  MARCELLINO:   The first aid kits do not

24  contain an epi pen and the drivers do not administer them at

25  present.

1          THE COURT:   Are the present drivers trained in epi

2   pens.

3          MR.  MARCELLINO:   Haven't got training in many

4   months, so I would say no.

5          MS.  DiPIETRO:   The school nurse would provide

6   annual training and the last time was December of '03.  Shortly

7   before December of '04, the nurse made inquiry about scheduling

8   it again and they learned about the change.

9          THE COURT:   Right.  We don't know, when does

10  school year end?

11         MR.  GREENSPAN:   A couple of weeks.

12         THE COURT:   Is it worth it for the next two weeks?

13  To get everyone trained, retrained, get them all epi pens?

14  Because I am not going to do something for next fall.  You

15  haven't shown to me there is irreparable harm for next fall.  I

16  think we should just have a breach of contract trial or motion

17  for summary judgment or you are going to have to show me some

18  irreparable harm which I don't have.  You've given me vague

19  thing it is tough to get another bus company in for the fall.

20  It sounds like a plausible breach of contract action, plausible.

21  But that doesn't mean you can't just sue on a breach of contract

22  and get another bus company.  Do other bus companies provide epi

23  pen support?

24         MR.  GREENSPAN:   We believe they do, your Honor.

25         THE COURT:   Just ditch them and get another bus

1   company.  I don't know what to say other than I am not persuaded

2   the irreparable harm if we are talking September.

3            MS.  DiPIETRO:  If I might, your Honor, the school

4   district has relied upon the set contract price going through

5   June of 06.  That is what they budgeted for.

6            THE COURT:   That is not irreparable harm.

7            MS.  DiPIETRO:  If I may, your Honor.  If they have

8   to now either incur the costs of making up for the service that

9   is now not being provided anymore or hire another bus company,

10  probably at a higher cost now, fuel prices have increased --

11           THE COURT:   That may be true.  You may win.  You

12  have may win a breach of contract action and get the money from

13  Laidlaw -- Laidlaw?  Yes, Laidlaw Transit.  You may -- it may be

14  a whooping.  The only thing that strikes me is irreparable harm

15  is the next two weeks if a little kid is bitten by a bee, I

16  don't want the kid to die because you guys are in a dispute

17  about what first aid is all about.

18           Now, if they are not trained and if this are no epi

19  pens and if it is going to take the two weeks to just even

20  accomplish all of this, it may not be worth it.  But that is the

21  only thing, I don't think you can get a bus company in two

22  weeks, so that is the only thing that begins to sound like

23  irreparable harm.

24           MS.  DiPIETRO:  The business manager has his doubts

25  whether a bus company could be in place even by the start of

1  school; and if that is the case, the plaintiff would have to at

2  a minimum, I suppose, put in place personnel to monitor the

3  buses, train them, make sure they are ready to administer epi

4  pens on 14 buses in the district --

5           THE COURT:    This is come September.

6           MS.  DiPIETRO:  Correct.

7           THE COURT:    I don't have a record for that.  I

8  have read everything other than the attachments, so I am relying

9  on your representation as to what they say.  Does it say by the

10 way, Mr. Marcellino, in the contract first aid?

11          MR.  MARCELLINO:    It does but the regs and

12 everything relating to first aid do not require epi pens.

13          THE COURT:    I read your stuff and there is an

14 argument on the regulation.  It is an argument.  It is the

15 course of dealings.  It is not the regulatory requirement.  It

16 is the contractual commitment.  So I understand what you meant

17 by the regs.

18          MR.  MARCELLINO:    The course of dealings, judge ,

19 I respectfully suggest is a mode for resolving an ambiguity.

20 There is no ambiguity.

21          THE COURT:    I think the term first aid is

22 ambiguous enough so whether it includes epi pen.

23          MR.  MARCELLINO:    Can I talk about who is

24 appropriate to do this?  There is a school bus, X number of

25 children on a bus.  A lot of noise.  The bus driver I think this

1  is probably one of the very last persons you might look to to

2  try to do this kind of work.

3                  THE COURT:   Do you know any bus -- company, any

4  busing service in American, none of my kids have a nurse riding

5  the bus.  Every single bus for every single bus when they go in

6  the morning.

7                  MR.  MARCELLINO:   The curve is coming round.  It

8  may be in a short while there will be monitors on the bus.  It

9  may be the very case.

10                  THE COURT:   It may be but from a point of view of

11  likelihood of success, I received no counter affidavit that

12  denied that the course have had dealing between the parties had

13  been that this bus company provided epi pen training and

14  potential, whatever the right word is, if a child started having

15  an attack.  Hopefully this never happens.

16                  MR.  MARCELLINO:   We attended training.

17                  THE COURT:   You never denied it.  Did you have epi

18  pens in your first aid kits way back when you were agreeing to

19  do this?

20                  MR.  MARCELLINO:   I don't believe we ever had

21  them.

22                  THE COURT:   I don't have a record that would deny

23  that.  Let me just say this.  This what we are going to do

24  today.  If you press me and if you believe these people are

25  trained and if they are not trained they can be trained and you

1    can get epi pens in there for the next two weeks of school, I

2    will do that.  But I deny the motion for preliminary injunction

3    come September.

4            If you want to renew this and prove to me why you

5    can't get a new bus company in, at all, that will do epi pens by

6    September, I'll have to address it; but right now it is

7    speculation.  You say that other bus companies in fact provide

8    epi pen support and the only issue is an increase in cost and

9    you can see them and get the money.  That is not what we call

10   irreparable harm.  If in fact it is impossible to get someone on

11   deck, just because no one is willing to do it I will have to

12   address that.  I don't have that issue right now.  Okay?

13           Now, let's try and get to a -- when can you get

14   back to me about whether or not you want to press for a two week

15   PI, if it is even feasible.  It may not be feasible.  What I

16   don't want and no one in this room wants is a kid to be bitten

17   by a bee in June in the next two weeks and to have this sort of

18   be sitting here in litigation.

19           MR. MARCELLINO:  I don't mean to be an

20   obstructionist because I hear what you say but what about

21   indemnity if something were to happen?

22           THE COURT:  Absolutely.  They offered to include

23   that and we'll include that in the PI.

24           MR. MARCELLINO:  I don't want to concede it.

25           THE COURT:  That is critical.  I can see why.

1   They are bus drivers.  That is fair enough.  Fair game.

2              MR.  GREENSPAN:   We've offered that, Judge.

3              THE COURT:   I saw that you did.

4              MR.  GREENSPAN:   I am meeting with the client

5   tonight so today is Wednesday.  The latest I am sure I could get

6   back to you by would be Friday.

7              THE COURT:   Now, let me add to your woes.  Next

8   week is the First Circuit Judicial Conference and I am gone

9   Monday, Tuesday and Wednesday.  So unless you get me a proposed

10  order on Friday, I am not going to issue anything until the

11  following Thursday which then I don't know, what town is this?

12  Groton.

13             MR.  GREENSPAN:   Groton Dunstable region.

14             THE COURT:   It could go another two weeks.  All

15  the districts of  Massachusetts are different.

16             MR.  GREENSPAN:   With the snow days, your Honor,

17  everybody is late.

18             THE COURT:   You have to check whether it is worth

19  the hunt.

20             MR.  GREENSPAN:   I will do that tonight.

21             THE COURT:   Let's get this case moving otherwise.

22  It strikes me that we could, this is not a very complicated

23  breach of contract action.  We can probably do it with a

24  deposition or two aside, right?

25             MR.  MARCELLINO:   We'd like three.

1    THE COURT:    Three apiece, fair enough.    Fine.

2  Do it in July.

3    MR.  GREENSPAN:    I just don't know why we may need

4  the three apiece.

5    THE COURT:    Would you like to take?

6    MS. DiPIETRO:    I think one 30(b)(6) with three

7  areas of inquiry.    That's it.

8    THE COURT:    We are moving pretty fast here.    So

9  let's just assume, the month of July to do depositions.    Motion

10  for summary judgment, I don't know, August -- I have it here.

11    I am not sure, by the way, this would be

12  appropriate for a summary judgment hearing, I have to say,

13  because it depends on whether Mr. Marcellino was going to

14  dispute the extent of the course of dealing which he may well

15  and then I'd have to try it.

16    MR.  MARCELLINO:    I think we can get it ready for

17  a trial.  My concern is --

18    THE COURT:    Why not try it.  Skip the motion for

19  summary judgment.  Why don't we try it in August and it will be

20  all done.  The jury will decide the course of dealing.  What

21  about the first week in August?  What do we look like -- a

22  little one weeker?

23    MR.  MARCELLINO:    Before I have to make that call,

24  and I will, you are thinking about an injunction short term, two

25  weeks, then what happens?  It goes back to --

1    THE COURT:    Goes back to no injunction for the

2    fall.  Because they can't possibly get another bus company in

3    two weeks.

4            MR.  MARCELLINO:    I understand.

5            THE COURT:    And quite candidly, and I am not going

6    to order it for any bus drivers that are not appropriately

7    trained.  I didn't know what this means.  I don't know if it is

8    doable.  I don't know how frequently the training has to be, how

9    hard it is to get the epi pens to everyone.  I don't know what

10   this involves.

11           MR.  MARCELLINO:    Could I have another one minute

12   to consult with my client?

13           THE COURT:    That is a good idea.

14           (Conferring with client).

15           THE COURT:    Do you need a few minutes?

16           MR.  MARCELLINO:    No, judge.  I think I'm there.

17   Could you just give me where you think we are so I can respond?

18   Because here is our problem.  We have some bus drivers,

19   obviously.  That is our business.  What are we supposed to do

20   with them?  How are we supposed to train them and how are we

21   supposed to do something in the next couple of weeks?

22           THE COURT:    You are not supposed to do anything.

23   They are supposed to train them.  They are supposed to come up

24   with the epi pen; and if it is not doable in the time frame, I

25   won't issue the injunction.  They don't have to do it.  All they

1  have to do is not block the drivers by obstruction or something.

2  I understand the course of dealing that has been uncontested in

3  the current record is a likelihood of success on the term "first

4  aid" including epi pen.  It doesn't mean you'll win on a summary

5  judgment and maybe even a jury once we have discovery won't buy

6  it and I do think for two weeks, there is irreparable harm and I

7  don't believe another bus company could be found in two weeks.

8  However, with the balance of the harm, I certainly would never

9  ask a bus driver to do it who is not appropriately trained or

10 equipped and I believe that is the school nurse's obligation

11 under the terms of the regulations at the very least and that is

12 how you've been doing it.

13            MR.  GREENSPAN:   That is how we've done it, your

14 Honor.

15            THE COURT:   They have to provide the training.

16 They have to provide the epi pen, they, meaning the

17 Groton-Dunstable Regional School District school nurses; and if

18 they can't do that, or decide it isn't worth it, then I will not

19 issue the injunction.  Right now I have issued nothing because

20 they have not come back to me.  You'll come back to me by Friday

21 about what you want me to do because otherwise at that point I

22 don't issue it till the following Wednesday-Thursday.  I suppose

23 I could -- well, I think that's best way to go.  I could

24 probably be here Wednesday afternoon, coming up from Rhode

25 Island is where it is, so, if in fact you decide you don't want

1   that for the next two weeks, then the real issue is going to be

2   and maybe you notify any kid who has potential bee stings about

3   the lack --

4               MR.  GREENSPAN:   We've done that, your Honor.

5               THE COURT:   And I've denied the motion for

6   preliminary enjunction starting in the fall because I have not

7   been persuaded of irreparable harm because you cannot find

8   another bus company.  Do I take it this is impossible to settle

9   in the interim over the summer?  Is it a question if you provide

10  the -- if they provide the guarantee of --

11              MR.  MARCELLINO:   Indemnity.

12              THE COURT:   Indemnity.

13              MR.  MARCELLINO:   Judge, indemnity is from a

14  school system, regional district really are not bankable if I

15  can use that phrase.  We'd have trouble settling.

16              THE COURT:   You don't have insurance?

17              MR.  MARCELLINO:   I shouldn't speak to that.

18              THE COURT:   Do you have insurance?

19              MR.  GREENSPAN:   I don't know the answer to that,

20  your Honor.  I know on some issues we do.

21              THE COURT:   Check.  Settle the thing big time.

22              MS.  DiPIETRO:   The medical affidavit which I hope

23  you have access to is not controverted and it establishes that

24  the risk of harm from improper administration of an epi pen is

25  almost nonexistent.

1    THE COURT:  But you still need training.  A

2    wouldn't know how to do it.

3    MS.  DiPIETRO:  No, no, the duty to indemnity, the

4    likelihood that would ever be triggered is so minuscule.

5    THE COURT:  Suppose the bus driver thought it was

6    a black fly when it was really a wasp and didn't do it and then

7    somebody second guessed the bus driver's judgment as to whether

8    it is appropriate and I see what they are worried about.  I

9    understand that.  That having been said, this is a matter of

10   contractual assumption; and you say other bus companies have

11   been willing to do it.  You need to see if you can get someone

12   in starting in the new school year right after Labor Day.

13   MR.  GREENSPAN:  Yes, your Honor.

14   THE COURT:  We'll have a trial August 1st.  Have

15   you both demanded jury trials, is that right?

16   MS.  DiPIETRO:  Yes.

17   MR.  MARCELLINO:  Uh-huh.  I believe it was

18   demanded by the plaintiff.

19   THE COURT:  I can't imagine it would be longer

20   than a week, would you?

21   MR.  MARCELLINO:  I don't think so.

22   MR.  GREENSPAN:  I don't think there is a lot of

23   facts in dispute.

24   THE COURT:  I have a couple of criminal, other

25   matters, check coming in this summer.  Check in to make sure it

 1  is still a doable date.  I may press hard to send you to a

 2  magistrate judge if it isn't.  The other possibility is to do a

 3  one dayer.  It really strikes me as going to be pretty simple,

 4  what does the term first aid mean in the understanding of the

 5  parties in this contract?  And maybe I am oversimplifying.

 6              MR.  MARCELLINO:    Somewhat, I respectfully say,

 7  Judge.

 8              THE COURT:    That may be.

 9              MR.  GREENSPAN:    If there is not a lot of denials

10  in the answer, your Honor, depending on the discovery and the

11  depositions.

12              THE COURT:    Sure.

13              MR.  GREENSPAN:    It could be summary judgment.

14              THE COURT:    See you on August 1st.  Okay.  Is

15  there any case law on this, epi pens and bus companies?

16              MR.  MARCELLINO:    Not that we are aware.

17              MR.  GREENSPAN:    We haven't found any, your Honor.

18              THE COURT:    It is actually pretty interesting.

19  Maybe not what you want to think about in August.  There it

20  goes.  Okay.  So you are going to let me know.

21              MR.  GREENSPAN:    I'll let you know clearly by

22  Friday.  Thank you, your Honor.

23              THE CLERK:    Court is in recess.

24              (Court recessed at 2:37 PM).

25

1                    C E R T I F I C A T I O N

2

3          I, Nancy L. Eaton, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7    _____    _____June 15, 2005___

8        Nancy L. Eaton, Court Reporter              Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GROTON DUNSTABLE** | ) |
| **REGIONAL SCHOOL DISTRICT** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **LAIDLAW TRANSIT, INC.** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**Civil Action No. 05-10978-PBS**

## LAIDLAW TRANSIT INC.'S AMENDED ANSWER, AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

### ANSWER

Defendant Laidlaw Transit Inc., ("Laidlaw"), hereby responds to the numbered paragraphs of plaintiff's ("Groton-Dunstable") Complaint as follows:

### INTRODUCTION

No response is required in the unnumbered introductory paragraph as it merely summarizes the allegations in the Complaint. To the extent that a response is required, those allegations are denied. Moreover, the plaintiff does not assert in its complaint that it intends to terminate the contract.

### PARTIES AND JURISDICTION

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted.

1

5.    Admitted.

6.    Admitted.

7.    Admitted. Laidlaw states that this matter has been removed to federal court which has concurrent jurisdiction pursuant to 28 U.S.C. § 1332 (a).

## FACTUAL ALLEGATIONS

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    Admitted.

12.    Denied.

13.    Laidlaw admits that, upon request from the plaintiff's school nursing staff, its bus drivers received first aid training and training for the administration of epinephrine by auto injector device (commonly referred to as an "Epipen"). Laidlaw denies that it agreed, as a contractual matter, to this training.

14.    Denied.

15.    Laidlaw denies that the above-referenced actions were contractual obligations. Laidlaw states that it informed the plaintiff, on approximately November 29, 2004, that the above-referenced actions would no longer be performed.

16    Laidlaw admits that it notified the plaintiff that it would not permit its bus drivers to receive training in epipen administration or to administer the epipen.

17.    Laidlaw admits that it has not performed these actions since approximately November 29, 2004. Laidlaw denies that these actions are a duty under any contract with the plaintiff.

2

18.    Laidlaw admits that it has informed the plaintiff that it would not perform these actions. Laidlaw denies that these actions are a duty under any contract with the plaintiff. Laidlaw admits that the contract term expires on June 30, 2006.

19.    Laidlaw states that it discussed, on a most preliminary basis, possible indemnification from the plaintiff against any harm flowing from the administration of the epipen. Laidlaw denies that the plaintiff offered to indemnify the defendant against any harm flowing from the administration of the epipen.

20.    Admitted.

21.    Laidlaw is without knowledge or information sufficient to admit or deny allegations in paragraph 21, so accordingly, they are denied.

22.    Laidlaw admits that the contract contains the quoted provision.

### COUNT ONE - BREACH OF CONTRACT

23.    Laidlaw repeats and reasserts its response to the allegations contained in paragraphs 1 through 22.

24.    Laidlaw admits that, among other provisions in the written contract between it and the plaintiff paid a fee.

25.    Admitted. Further answering, Laidlaw asserts that the contract between the parties is a fully integrated, unambiguous contract.

26.    Laidlaw admits that the written contract governs the contractual relationship of the parties. Laidlaw denies that the practices and conduct of the parties govern, in whole or in part, the contractual relationship between the parties.

3

27.     To the best of Laidlaw's current knowledge, information and belief, the plaintiff has performed its contractual obligations and is ready, willing and able to perform its future obligations under the subject contract.

28.     Denied.

29.     Laidlaw denies that it has any contractual or other obligation to perform these actions for the remainder of the term of the contract which expires June 30, 2006, and that it breached the contract between the parties. Laidlaw states that it has informed the plaintiff that it will not perform, or be responsible for these actions.

30.     Denied.

## COUNT II - PROMISSORY ESTOPPEL

31.     Laidlaw repeats and reasserts its responses to the allegations contained in paragraph 1 through 30.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

## COUNT III - DECLARATORY JUDGMENT

36.     Laidlaw repeats and reasserts its responses to the allegations contained in paragraph 1 through 35.

37.     Denied.

38.     Denied.

39.     Admitted.

40.     Denied.

4

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

### INTRODUCTION

In this declaratory judgment counterclaim, the Defendant Counterclaimant, Laidlaw Transit, Inc. ("Laidlaw") seeks a declaration from this Court that the Defendant in Counterclaim, Groton-Dunstable Regional School District (the "School District)" has repudiated the subject contract and, as a consequence, has relieved Laidlaw of its duty to perform. In addition, the School District's actions in regard to such repudiation are a breach of the implied covenant of good faith and fair dealing under the subject contract. Laidlaw seeks such damages as may be meet and just.

### PARTIES

1.       The School District is a regional school district duly organized under the laws of the Commonwealth of Massachusetts, and has its principal place of business at 73 Pepperell Road, West Groton, MA 01450.

2.       Laidlaw is a corporation organized under the laws of Delaware, with its corporate headquarters at 55 Shuman Boulevard, Suite 400, Napervilles, IL 60563.

### JURISDICTION AND VENUE

3.       This Court has diversity jurisdiction over the parties, and the actions complained of occurred primarily and substantially in Massachusetts. Venue in this Court is proper because the School District is found in Middlesex County in Massachusetts.

BST99 1465199-1 071300 0012

**THE CONTROVERSY**

4.    As more fully set forth in the Complaint of the School District, Laidlaw and the

School Districts are parties to a school bus contract, the term of which expires on June 30, 2006.

5.    School District's Complaint contains three counts.  Count I is for breach of

contract, Count II is for promissory estoppel, and Count III is for declaratory judgment.

6.    As set forth in paragraph 22 of the School District's Complaint and Request for

Declaratory and Injunctive Relief, the School District quoted from the contract as follows:

> In addition to the termination provisions provided in the Invitation to Bid,
> the Contractor agrees that if at any time during the term of this contract,
> the school district determines that the contractor is negligently or
> incompetently performing the work, or any part thereof, or that the
> contractor is unable to the satisfaction of the school district to perform this
> contract in accordance with all of its terms and provisions and the school
> district determines that the health and safety of the students or other
> passengers is endangered, the school district may, after forty-eight hours
> written notice to the contractor if the matter complained of remains
> uncorrected, at its election at any time thereafter, terminate this contract
> by written notice to the contractor.  In any such case, the notice
> terminating the contract shall specify the effective date of such notice, and
> thereupon, the date so specified, this contract shall terminate (contract,
> sixth paragraph).

7.    In paragraph 40, the School District alleges that, pursuant to Chapter 231A of the

Massachusetts General Laws, it is entitled to a declaration that:

> a.    the contract between the parties obligates Laidlaw to permit its drivers to
> be trained in the administration of the Epipen and to administer it should
> the need arise.
>
> b.    The defendant's non-performance of these duties and its refusal to perform
> them in the future constitutes a breach of the contract between the parties.
>
> c.    The defendant has been in breach of the contract since November 29,
> 2004.

6

         d.     The plaintiff has the right to terminate the contract because it has determined the defendant is unable to perform to the plaintiff's satisfaction and, as a result, the safety and health of students is endangered.

8.     Notwithstanding the foregoing, the School District, on July 6, 2005, issued an invitation for bid for the transport of students beginning on August 25, 2005 to August 25, 2008, with an option to extend for two more years. A true and complete copy of the new invitation for bid is attached hereto as Exhibit A.

9.     Bid submissions under the new invitation for bid are due on July 21, 2005.

10.     The School District, however, has not provided Laidlaw with any written notice regarding termination as required under the above quoted provision of the contract.

11.     Accordingly, the present contract between Laidlaw and the School District, by its terms, remains in effect and runs through the end of the school year in 2006. As noted above, the new invitation for bid seeks bids for school transportation beginning in 2005.

12.     The new invitation for bid also contains the following provisions as respects Epipens and possible administration of Epipens on school buses:

**Section 3.11**    The Contractor will insure that all drivers receive first aid training. Additionally, the Contractor will insure that all drivers are trained to administer epipens as part of their first aid responsibilities.

**Section 3.12**    All drivers are expected to administer an epipen in emergency situations.

13.     By seeking bids that provide for the administration of Epipens by school bus drivers as a matter of contract, while at the same time not notifying Laidlaw of its election to terminate the existing contract, the School District, on information and belief, is seeking to have it both ways, i.e. to create data and evidence for use at a trial where it seeks to assert its rights

7

under the existing contract while at the same time repudiating the existing contract between the parties by soliciting bids for the upcoming school year that is under the existing contract.

14.    Moreover, any assertion that the School District can reject all bid submissions after July 21, 2005, the due date of the new invitation for bid, and do so prior to trial in this action, presently scheduled to begin August 1, 2005, does not account for the planning and actions of Laidlaw to prepare for the 2005 school year.

15.    This action was filed by the School District on May 5, 2005, yet the School District waited until July 6, 2005 to issue the new invitation for bid.

16.    Such gamesmanship constitutes a breach of the implied covenant of good faith and fair dealing that inheres in the existing contract between the parties.

## JUSTICIABLE CONTROVERSY

17.    There is a justiciable controversy between the parties regarding the status of the existing contract between the parties, whether it has been repudiated by the School District, and whether the acts of the School District are a breach of the implied covenant of good faith and fair dealing.

18.    All parties necessary for an adjudication of the controversy are before this Court and this Court can render a final and binding adjudication for the respective rights and obligations of the parties under the subject contract and otherwise.

8

## **RELIEF REQUESTED**

Laidlaw respectfully request that this Court determine and declare that:

1.      The School District has repudiated the subject contract and such repudiation relieves Laidlaw of its duties and obligations under such contract.

2.      In the circumstances found here, the School District's soliciting bids for a time period presently covered by the existing contract constitutes a breach of the implied covenant of good faith and fair dealing.

3.      This Court should otherwise determine and declare the rights and responsibilities for the parties and award such damages or other relief as are meet and just.

Respectfully submitted,

LAIDLAW TRANSIT, INC.

By its attorneys,

/s/ James J. Marcellino
James J. Marcellino  (BBO #318840)
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109
617-535-4000

Dated:  July 12, 2005

9

**EXHIBIT A**



GROTON-DUNSTABLE REGIONAL SCHOOL DISTRICT

P.O. Box 729
Groton, MA 01450-0729

Tel.: 978/448-5505
Fax: 978/448-9402

July 6, 2005

Laidlaw Transit, Inc
203 Airport Road
Fitchburg, MA 01420

To Whom It May Concern:

Enclosed please find the Invitation for Bid for School Bus Transportation for the Groton-Dunstable Regional School District.

The district would be pleased to receive a bid from you. Bids are to be received no later than July 21, 2005 at 2:00 p.m.

Sincerely,

Craig A. Young
Director of Business & Finance

# GROTON-DUNSTABLE REGIONAL SCHOOL DISTRCT

### INVITATION FOR BID

## SCHOOL BUS TRANSPORTATION
### FOR
## THE GROTON-DUNSTABLE REGIONAL SCHOOL DISTRICT, MASSACHUSETTS

### DUE

### THURSDAY, JULY 21, 2005

## GROTON-DUNSTABLE REGIONAL SCHOOL DISTRICT

### INVITATION FOR BID

#### FOR

### GROTON-DUNSTABLE REGIONAL SCHOOL DISTRICT
### SCHOOL BUS TRANSPORTATION

#### DUE

### THURSDAY, JULY 21, 2005

1.   General Information and Bid Submission Requiremer ts
2.   Scope of Service
3.   Quality Requirements
4.   References
5.   Bid Pricing Sheet
6.   Rule for Award
7.   Certificate of Corporate Vote
8.   Non-Collusion Form
9.   Tax Compliance Form
10.  Additional Contract Terms and Conditions

**Invitation for Bid**

**For**

**School Bus Transportation for
Groton-Dunstable Regional School District
Massachusetts**

**Due**

**2:00 P.M.,  THURSDAY,  JULY 21, 1005**

Interested Parties:

Bidders are invited to furnish the Groton-Dunstable Regional School District with School Bus Transportation beginning August 25, 2005 and continuing to August 25, 2008 with an option to extend for two (2) more years

Bids will be accepted at the Groton-Dunstable Regional School District Administrative Offices,
73 Pepperell Road, P.O. Box 729, Groton, Massachusetts. 01450
Open to Public - Monday through Friday from 8:00 a.m. to 4:00 p.m.

**All bids must be received no later than 2:00 p.m., Thursday, July 21, 2005.**

**At 2:01 p.m. on Thursday, July 21, 2005, at the Office of the Superintendent of Groton-Dunstable Regional Schools, 73 Pepperell Road, Groton, MA bids will be publicly opened and read aloud.**

Bids will be accepted only if sent by Certified Mail, Return Receipt Requested, or delivered by hand between the hours of 8:00 a.m. and 4:00 p.m. (note exception on day of bid opening)  All bids must be sealed and clearly marked:

**"Groton-Dunstable Regional School District
School Bus Transportation Bid"**

The contract will be awarded to the lowest responsible and responsive bidder.  However, the School District reserves the right to accept or reject any or all bids, as may be considered to be in the best interest of the Groton-Dunstable Regional School District.  Copies and information, if needed, may be obtained by contacting Craig A. Young, Director of Business & Finance, Groton-Dunstable Regional School District Administrative Offices at 978-448-5505 ext. 205 or by FAX at 978-448-9402

## GENERAL INFORMATION & BID SUBMISSION REQUIREMENTS

1.0     Sealed bids for the transportation of pupils and other persons authorized by the Groton-Dunstable School Committee, to and from school including mid-day kindergarten runs, athletic, curricular, and extra-curricular activities as required by the Groton-Dunstable Regional School District as set forth in the following `INSTRUCTIONS TO BIDDERS`. Bids will be opened in the Office of the Superintendent of the Groton-Dunstable Regional School District, located at 73 Pepperell Road, West Groton, Massachusetts **at 2:01 p.m. on Thursday, July 21, 2005.**

1.1     Questions regarding the bid specifications must be submitted in writing to Craig A. Young, Director of Business and Finance of the Groton-Dunstable Regional School District Administrative Offices before **3:30 p.m., Thursday, July 14, 2005.** Questions may be delivered, mailed or faxed  Written responses will be mailed or faxed to all bidders on record having picked up specifications

1.2     Price  Bidders shall submit bids as requested to be in effect for a three (3)-year contract with a two (2)-year option to extend.

1.3     Bids must be submitted in a sealed envelope to the Office of the Superintendent of the Groton-Dunstable Regional School District Administrative Offices, located at 73 Pepperell Road, P.O. Box 729, Groton, MA 01450 on or before the hour of **2:00 p.m. Thursday, July 21, 2005.** The envelope shall be clearly marked:

<div align="center">

**"GROTON-DUNSTABLE REGIONAL SCHOOL DISTRICT**
**SCHOOL BUS TRANSPORTATION BID"**

</div>

1.4     The envelope must be marked with the bidders' name and address  Bids will be accepted only if sent by Certified Mail, Return Requested, or Hand Delivered.

1.5     The bidder to whom the award is made shall enter into individual written contracts with the Groton-Dunstable Regional School District  The requirements set forth in these specifications shall be considered binding and a part of the contract with the successful bidder.

1.6     Bidders must use bid forms provided with the specifications.

1.7     If any changes are made to this Invitation for Bid, an addendum will be issued  Addenda will be mailed or faxed to all bidders on record as having picked up the Invitation for Bid.

1.8     A bidder may correct, modify, or withdraw a bid by written notice received by Groton-Dunstable Regional School District prior to the time and date set for the bid opening.  Bid modifications must be submitted in a sealed envelope clearly labeled

<div align="center">

**"MODIFICATION #     "**

</div>

Each modification must be numbered in sequence, and must reference the original Invitation for Bid.

<div align="center">

3

</div>

1.9 After the bid opening, a bidder may not change any provision of the bid in a manner prejudicial to the interests of the District or fair competition. Minor informalities may be waived or the bidder will be allowed to correct them.

1.10 The School Committee reserves the right to reject any or all bids or to accept any bid even if that bid is not the lowest, if it deemed to be in the best interest of the Groton-Dunstable Regional School District.

1.11 All bid prices must remain firm for thirty (30) days following the bid opening. Action on the award of the contract will be taken within thirty (30) days after the bid opening.

1.12 If, at the time of scheduled bid opening, the Office of the Superintendent is closed due to uncontrolled events such as fire, snow, ice, wind, or building evacuations, the bid opening will be postponed until **2:01 p.m. on the next normal business day** Bids will be accepted until that date and time.

1.13 Two copies of each bid are required.
**Signed copies of the CERTIFICATE OF CORPORATE VOTE with seal affixed must accompany each bid.**

1.14 Bids must be signed by an officer of the corporation or by a duly authorized officer of the company. such authorization to be verified in writing.

1.15 All bids must include a **non-collusion form, tax compliance certificate, bid pricing sheet, and reference form.**

1.16 Each bid shall be accompanied by a **certified check or bid bond in the amount of ten thousand ($10,000) dollars.**

1.17 In the event that the selected bidder fails to honor their bid, they will forfeit their bid deposit or bond.

1.18 Within fifteen (15) days of the award of the contract, bid deposits and bid bonds will be returned to the unsuccessful bidders.

1.19 The successful bidder will provide a **Performance Bond in the amount of 100% of the contract price for one (1) year** within twenty (20) days of the contract award and by **August 1st**, of each year of the contract.

1.20 Notification by the School Committee to the successful bidder is deemed to constitute a legal and binding contract. The successful bidder will be required to enter into a written contract for student transportation services within twenty (20) days of written notification of the award. Such contract will be signed by the School Committee of the Groton-Dunstable Regional School District and by the Bidder.

1.21 The contract will be awarded for three (3) years from **August 25, 2005** until **August 25, 2008** with an option extending for two (2) more years

4

## SCOPE OF SERVICES

**The contractor will provide the following services:**

2 0     Provide school bus transportation of pupils and other persons authorized by the Groton-Dunstable School Committee, to and from school including mid-day kindergarten runs, athletic, curricular and extra-curricular activities and late busses as required by the Groton-Dunstable Regional Public Schools.

2.01    The contract term for school bus transportation services will be August 25, 2005 through August 25, 2008, a three (3) year contract, with an option to renew for an additional two (2) years. The Groton-Dunstable Regional School District School Committee will exercise this option

2.02    All matters pertaining to school transportation as specified in the contract shall be under the authority of the Groton-Dunstable Regional School District

2 03    During the entire term of the agreement, the contractor shall comply in every respect with all laws, rules and regulations of Massachusetts affecting or regulating the transportation of children, including by not limited to the motor vehicle code and make necessary changes to buses to meet any newly enacted school bus regulations.

2 04    The Groton-Dunstable Regional School District reserves the right to revoke any contract for cause and have any driver(s) removed from driving.

## EQUIPMENT

2.1     The number of buses required shall be twenty-two (22). In addition, the Contractor agrees to keep two (2) spare buses available on site. All buses must be at minimum 71-passenger buses. In the event the number of buses are increased or decreased, said increase or decrease will be equal to the unit price contained in the bid.

2.2     Buses to be used in fulfilling the terms of the agreement shall be not more than five (5) years old and show no more than one hundred thousand (100,000) miles on its odometer at any time during the life of the contract.

2.3     Each bid shall include a detailed description of the buses to be furnished, including year of manufacture, present mileage, make of chassis, make of body, seating capacity, and present condition.

2.4     Each bus shall display prominently on both sides the name **GROTON-DUNSTABLE REGIONAL SCHOOL DISTRICT.** A number for identification will be assigned to each bus, said number to be painted in black, six (6) inches high, immediately to the left of the entrance door Substitute buses must be identified with appropriate temporary numbers.

5

## EQUIPMENT

2 5    The Contractor shall keep all equipment used in the transportation of students in strict accordance with the State of Massachusetts Minimum Standard for School Buses, and such equipment shall be maintained in good mechanical order at all times to pass the State School Bus Inspection. Said buses shall be kept clean and in sanitary condition and open to examination by the School District and its members. Each bus will carry whatever equipment necessary to meet all appropriate laws and regulations during the life of this contract

2.6    The School District reserves the right to reject any vehicle that does not conform to the specifications as defined herein. The Bidder will submit an annual update documentation identifying and detailing the composition of the bus fleet to be used as of August 1 of each contract year.

2 7    The Contractor agrees to furnish all necessary fuel, oil, grease, tires maintenance, and repairs and provide a place of garaging throughout the life of the contract  The location of the place of garaging must be provided to the Superintendent prior to August 1 of each contract year

2.8    The Contractor agrees to keep two (2) spare buses available on site. In the event of a breakdown, a substitute bus must be sent to the point of breakdown to make such replacement within thirty (30) minutes of notification of such breakdown  Spare buses much conform to bus specifications in the contract. In the event that a bus does not arrive within thirty (30) minutes, a penalty in the amount of S25 shall be assessed at the discretion of the Superintendent

2.9    There shall be no substitutions of buses without permission of the Superintendent of Schools of the Groton-Dunstable Regional School District for the duration of the contract, except in cases of emergency breakdown; and then only for period of time not exceeding five (5) consecutive days  All substitute buses shall be subject to all contract requirements.

2 10   Nothing in this bid will preclude the School District from using other vendors for transportation purposes when the contractor is not able to provide contracted services

2.11   If for any reason a bus cannot be operated on a school day, the bidder agrees to provide suitable insured transportation without additional charge

2 12   In the event the Contractor is unable to furnish transportation temporarily, the Superintendent of Schools is authorized to hire a bus or buses for such time as necessary. The District shall pay to the Contractor the same amount specified in the rate schedule less all expenses and costs incurred by the District in securing the services of such personnel and equipment

2 13   Neither assignment or subletting of the contract, or work nor assignment of money due or to become due shall be made without the written consent of the School Committee.

2 14   The Contractor agrees to make available, at their own expense, one (1) bus to be brought to each school up to ten (10) times per year for use in bus evacuation drills by the safety officer or designated person

2 15   The Contractor agrees to make available sufficient buses for athletic or student field trips as not to diminish the number of buses for regular student transportation.

5

## DRIVERS

3.0    The Contractor shall see to it that drivers are properly licensed and provide the training necessary to meet existing statutes or any laws or regulations enacted during the life of the contract.

3.2    The responsibility for hiring and discharging personnel in respect to all of the foregoing shall rest entirely upon the Contractor, and the Contractor agrees that it shall enter into no agreement or arrangement with any employee, person, or group or organization which will in any way interfere with the Contractor's ability to comply with the Agreement. The Contractor further agrees that the District shall have the right to require dismissal from service to the School District any person or driver who in the District's opinion does not provide appropriate service to the School District.

3.3    Drivers (including substitutes) may be required to attend periodic School District conducted meetings.

3.4    Drivers will report all cases of student misbehavior on busses and will handle all disciplinary matters in strict accordance with school policy. In no case will a driver eject a student from a bus for misbehavior.

3.5    The Superintendent may request a driver to submit to a physical by a doctor chosen by the Superintendent, in such case the contractor will pay for the physical examination.

3.6    Drivers are expressly forbidden to smoke at all times on all buses and /or school property

3.7    Drivers must remain on their respective buses at all times when passengers are on board and while picking up or discharging students on school property except in cases of emergency.

3.8    Buses shall be on the premises of the school building to deliver children in the morning no later than five (5) minutes before the opening of school and not earlier than fifteen (15) minutes before the opening of school and no earlier than ten (10) minutes before the close of school. Buses shall be allowed to idle on school property for longer five (5) minutes only with formal approval requested and granted before the opening of the school year.

3.9    Drivers shall not be permitted to carry any person other than a school officer, teacher, or chaperone while carrying pupils without the express permission of the Superintendent of Schools. Exceptions to this are bus company employees such as supervisors, student drivers, and trainees.

3.10    Prior to August 1 of each contract year, a list of drivers with assigned bus routes will be submitted to the District. The list will indicate that drivers have met all requirements of the State of Massachusetts including the necessary background checks.

3.11    The Contractor will insure that all drivers receive first aid training. Additionally, the Contractor will insure that all drivers are trained to administer epipens as part of their first aid responsibilities.

3.12    All drivers are expected to administer an epipen in emergency situations.

## RADIO COMMUNICATION

4.0 All buses must be equipped with UHF FM band two-way radios permanently mounted with external roof top mounted antennas in working order capable of communicating with a base station located in the office of the dispatcher. The Contractor shall provide a repeater station with the capability for 95% coverage of the towns of Groton and Dunstable.

4.1 Radios will be provided to all schools so that effective communication with school buses or the base station can be made in an emergency

4.2 All buses including spares must be equipped with "black boxes" for a video camera system. The Contractor will be expected to provide one camera per seven buses to be used with the "black boxes". The Contractor agrees to keep the video camera system in proper working order throughout the life of the contract. The bidder shall include with his/her documentation, identifying and detailing the proposed video camera system

4.2 The Contractor shall provide an on-site dispatcher who shall be present whenever buses are operating including the noontime Kindergarten runs. The Contractor must have an office or a telephone connection through which the Office of the Superintendent may make immediate contact with the owner or dispatcher during the hours in which schools are in operation beginning no later than 6:00 a.m. and ending no earlier than 4:30 p.m. The Contractor shall provide answering machines for this telephone connection at all times when the dispatcher is not available. The owner or his agent must be willing to appear for conferences with the School Committee as necessary and requested.

4.3 The bidder shall designate by name and position, a particular staff member, for the Groton-Dunstable Regional School District, who shall be assigned to coordinate transportation arrangements under the contract and to carry out instructions submitted by the Superintendent of Schools

## ROUTES AND SCHEDULES

5.0 The school day in the Groton-Dunstable Regional School District are projected to be as follows:

| | |
|---|---|
| High School | 7:25 - 1:50 |
| Middle School | 8:00 - 2:25 |
| Swallow /Union School ( Dunstable) | 9:00 - 3:05 |
| Prescott School | 9:05 - 3:10 |
| Florence Roche School | 9:10 - 3:15 |
| Early Childhood (Boutwell) School | 9:00 -11:45 |
| | 12:15 –3:00 |

8

## ROUTES AND SCHEDULES

5.1    All routes, time schedules, number of buses and mileage shall be fixed annually by the Superintendent of Schools under the direction of the Groton-Dunstable Regional School Committee.

5.2    All times are approximate and subject to change by the School Committee or Superintendent

5.3    Daily route mileage for regular route buses will not exceed one hundred and sixty-five (165) miles per bus per day, kindergarten mid-day route mileage will not exceed fifty (50) miles per bus per day, late bus runs will not exceed fifty-five (55) miles per bus per day.

5.4    Daily route mileage is computed on morning runs from the point of the first pupil pickup on the first run to the last pupil drop off on the last run, on mid-day kindergarten runs first school pickup to the last pupil drop off for each District approved route.

5.5    The Contractor will design the school bus routes with the use of a computer routing system. The School District will provide student lists from which to route the buses. Each school, prior to two weeks of school opening, will be provided a list of their respective routes, students bus lists, the sequence of stops; students assigned to each stop and approximate time of stop. Additionally an alpha list of all students indicating their bus route assignment will be provided

5.6    The Contractor shall provide school bus routes to the Superintendent two weeks prior to school opening in September 2005 and each year thereafter. Accompanying the school bus routes will be a student bus list per route, and mileage from home to school for each student.

5.7    All bus routes will be reviewed and approved by the School District. The Groton-Dunstable Regional School District shall retain the right to make revisions in routes and adjustments in the number of buses required to best suit the needs of the District at any time during the life of this contract. Such revisions shall be deemed an ordinary part of this contract.
       The Contractor shall not change routes or stops without the express consent of the Superintendent's Office. Any routes or stops changed without the express approval, except in emergency situations, may result in a $25 assessment for each change of route or stop.

5.8    The Contractor shall provide transportation at no additional cost for deviations from normal starting and dismissal times which may occur at various times during the school year on the elementary and secondary levels as well as in emergency situations determined by the Superintendent of Schools in the Groton-Dunstable Regional School District.

5.9    If for some unforeseen circumstance, such as weather, cause cancellation of school and/or the need for transportation services, and if the Contractor is notified of such cancellation in a timely fashion, there shall be no payment to Contractor for such day

5.10    Deviation from the regular schedule or routes may occur:
       On certain stormy weather days because of road conditions.
       On certain other days when deemed necessary due to emergency conditions

5.11    The contractor will not charge any extra fee for any early release trips.

9

## ROUTES AND SCHEDULES

5.12    It is estimated that twenty-two (22) regular route buses shall be used one hundred eighty-one (181) days. Five (5) Kindergarten mid-day buses shall be used one hundred and eighty (180) days. Kindergarten buses represent additional use of the twenty-two (22) regular route buses bid.

5.13    It is estimated that the District shall require two hundred and fifty (250) athletic and /or field trips per year. It is further estimated that said trips shall require six thousand (6000) miles of travel as well as six hundred (600) hours of waiting time.

5.14    All mileage charged for field and/or athletic trips shall be computed by using the MILO MILEAGE GUIDE as published by the NEW ENGLAND MOTOR ROUTE BUREAU. Mileage shall be computed from the school of origination (Pick-Up Point) to the destination and back to the school of origination.

5.15    All trips transporting the District students, regardless of the source of funds, shall be billed at the bid price

5.16    The speed and method of operation of school buses shall always be such as to insure the maximum degree of safety for the pupils, and shall be in compliance with al state and local laws regarding this aspect

5.17    Once the school bus operation commences, the contractor is responsible to furnish ridership information to the school district upon the district's request. This information will be used to insure buses are not overloaded and routes are efficiently designed.

## INSURANCE

6.0    The Contractor will have in force for each school year not less than $10,000,000/$5,000,000 bodily injury liability insurance and not less than $500,000 property demage insurance.

6.1    Groton-Dunstable Regional School District will be listed as an additional insured

6.2    No cancellation of or exchange or revision in the insurance by the Insurer or Insured, the existence of which insurance is evidenced by this certificate, shall be valid unless written notice thereof is given to the Groton-Dunstable Regional School District, at least thirty (30) days prior to the intended date of cancellation, change or revision by mail, postage prepaid and evidenced by a return receipt, or if the insurance is cancelled, or the Performance Bond withdrawn, the contract is null and void

6.3    Within ten (10) business days after notice of the contract award, the Contractor shall deposit with the Superintendent, Certificates of Insurance from the Insurer stating the insurance policies required in the above section have been issued by the Contractor.

6.4    The Contractor must file a copy of these policies with the Superintendent by August 1st of each school year during the contract period.

6.5    Evidence of Workers' Compensation Coverage shall be filed with the Office of the Superintendent of Schools by September 1st of each year that the contract is in effect.

6.6    The Contractor agrees to save, defend, indemnify and hold harmless the Groton-Dunstable Regional School District, the Town of Groton and the Town of Dunstable against any and all suits, claims or liabilities of every name, nature and description arising out of or in consequence of the acts of its agents, servants or employees, in the performance of its obligations under this contract or by reason of its failure to fully comply with the terms of this contract, such indemnity to run to the Groton-Dunstable Regional School District, the member towns, its officers, agents and employees

**Quality Requirements**

The Contractor must provide the following:

1.      Bidders must provide all of the services described in:

          Section II:  Scope of Services

          and comply with all:

          Bid Submission Requirements listed in Section .

2.      Bidders must have a minimum two (2) years of satisfactory performance under at least five (5) different contracts similar in size to the proposed contract.

3.      Bidders shall include, with bid, a complete list of all of the contracts currently held in the State of Massachusetts along with phone numbers and the contac person for each contract

4.      History of the firm.

**References**

**REFERENCE FORM**

Bidder: _____

**IFB TITLE:**     School Bus Transportation

**Bidder must provide references for:**

A complete list of all the contracts **CURRENTLY** held in the State of Massachusetts

Reference: _____      Contact: _____
Address: _____      Phone: _____
_____      Fax: _____

Reference: _____      Contact: _____
Address: _____      Phone: _____
_____      Fax: _____

Reference: _____      Contact: _____
Address: _____      Phone: _____
_____      Fax: _____

Reference: _____      Contact: _____
Address: _____      Phone: _____
_____      Fax: _____

Reference: _____      Contact: _____
Address: _____      Phone: _____
_____      Fax: _____

12

### SCHOOL BUS TRANSPORATION
### BID PRICING SHEET

#### Three (3) Year Contract with Two (2) Year Option to Renew

| | Three -Year Contract | | | 2 -Year Option to Renew | |
|---|---|---|---|---|---|
| | Year 1 | Year 2 | Year 3 | Year 1 | Year 2 |

1. Regular Route Buses
   (minimum 71 passenger)
      cost per bus per day

x
(estimated 22 buses for 181 days) =
   Annual Cost

2. Kindergarten - Mid-Day
      cost per bus per day

x
(estimated 5 buses for 180 days) =
   Annual Cost

3. Athletic Events and Field Trips
      cost per bus per mile

x
(estimated 6000 miles)=
   Annual Cost

   waiting time

x
(estimated 600 hours) =
   Annual Cost

13

## SCHOOL BUS TRANSPORTATION
## BID PRICING SHEET
### Three (3) Year Contract with Two (2) Year Option to Renew

| | Three -Year Contract | | | 2 -Year Option to Renew | |
|---|---|---|---|---|---|
| | Year 1 | Year 2 | Year 3 | Year 1 | Year 2 |
| 1  Regular Route Buses | | | | | |
| Annual Cost | _____ | _____ | _____ | _____ | _____ |
| 2. Kindergarten - Mid-Day | | | | | |
| Annual Cost | _____ | _____ | _____ | _____ | _____ |
| 3. Athletic Events and Field Trips | | | | | |
| Annual Cost of mileage | _____ | _____ | _____ | _____ | _____ |
| Annual Cost (waiting time) | _____ | _____ | _____ | _____ | _____ |
| Total  Annual  Cost  per  year: | _____ | _____ | _____ | _____ | _____ |

**THREE-YEAR CONTRACT**
GRAND TOTAL:_____

**TWO-YEAR OPTION**
GRANDTOTAL: _____

### RULE FOR AWARD

All unit prices must remain constant for the entire three-year contract and two-year option to renew  One contract for all regular route, kindergarten, late, athletic and field trip buses will be awarded to the responsive and responsible bidder with the lowest grand total price for the three-year contract and the lowest grand total price for the two-year option to renew

Bidder's Name _____

Address _____

_____

Tel No  _____        FAX No _____

Signature_____

Print name_____

14

## Certificate by Corporation to sign Contract

At a duly authorized meeting of the Board of Directors of the
(Name of Corporation)_____

held on _____ At which all the Directors were present or waived notice, it
(Date)

was voted that _____
(Name) (Officer)

of this company, be and he hereby is authorized to execute contracts and bonds in the name and behalf of said
company, and affix its Corporate Seal thereto, and such execution of any contract or obligation in this company's
name on its behalf by such_____
(Officer)

under seal of the company, shall be valid and binding upon this company.

A TRUE COPY,

ATTEST:_____
(Clerk)

PLACE OF BUSINESS_____ _____

DATE OF THIS CONTRACT_____

I hereby certify that I am the clerk of the_____

that _____ is the duly elected _____
of said company, and the above vote has not been amended or rescinded and remains in full force and effect as of
the date of this contract

_____
(Clerk) (Corporate Seal)

Certificate by Corporation to s gn Contract

15

CERTIFICATE OF NON-COLLUSION

The undersigned certifies under penalties of perjury that this bid or proposal has been made and submitted in good faith and without collusion or fraud with any other person. As used in this certification, the word "person" shall mean any natural person, business, partnership, corporation, union, committee, club, or other organization, entity, or group of individuals.

_____

(Signature of individual signing bid or proposal)


_____

(Name of business)

16

**Tax Compliance Certification**

Pursuant to M.G.L. Chapter 63C, Section 49A, I certify under the penalties of perjury that, to the best of my knowledge and belief, I am in compliance with all laws of the Commonwealth relating to taxes, reporting of employees and contractors, and withholding and remitting child support.

_____        _____
Social Security Number or                       Signature of Individual or
Federal Identification Number                   Corporate Name

                                                              by:
                                                              Corporate Officer
                                                              (if applicable)

17